Motor Vehicle Admin. v. Sundar Seenath, No. 82, September Term, 2015

**MD. CODE ANN., TRANSP. (1977, 2012 REPL. VOL., 2015 SUPP.) § 16-205.1 – IMPLIED CONSENT, ADMINISTRATIVE PER SE LAW – ADVICE OF RIGHTS FORM – DUE PROCESS –** Court of Appeals held that Motor Vehicle Administration Advice of Rights form is neither invalid as applied nor facially invalid in that form is not misleading as to eligibility of holder of commercial driver's license for restrictive license where commercial driver's license holder drives non-commercial motor vehicle and fails alcohol concentration test.

Argued: April 5, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 82

September Term, 2015

_____

MOTOR VEHICLE ADMINISTRATION

v.

SUNDAR SEENATH

_____

Barbera, C.J.
*Battaglia
Greene
Adkins
McDonald
Watts
Hotten,

JJ.

_____

Opinion by Watts, J.
 Hotten, J., dissents.

_____

Filed: May 23, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

This case requires us to determine the amount of notice that the Motor Vehicle Administration ("the MVA"), Petitioner, is required to provide the holder of a commercial driver's license in the "Advice of Rights" form, previously labeled "DR-15,"[1] as to the commercial driver's license holder's eligibility for a restrictive license after having failed an alcohol concentration test. The purpose of the Advice of Rights form is to assist law enforcement officers with making the advisements that are required by Md. Code Ann., Transp. (1977, 2012 Repl. Vol., 2015 Supp.) ("TR") § 16-205.1,[2] "commonly known as the 'implied consent, administrative per se law,' which provides a basis for the automatic suspension of the licenses of drivers who refuse to submit to testing for alcohol and drugs." Motor Vehicle Admin. v. Gonce, 446 Md. 100, 102, 130 A.3d 436, 437-38 (2016) (citation omitted).[3]

---

[1]The Advice of Rights form's current version is labeled "DR-015," was produced in October 2015, and is available at http://www.mva.maryland.gov/_resources/docs/DR-015-10-15-ENGLISH.PDF [https://perma.cc/V3WQ-4RPD].

[2]Two amendments to TR § 16-205.1 have become effective since the traffic stop in this case, and another amendment will become effective on October 1, 2016. See 2015 Md. Laws ___ (Vol. ___, Ch. 247, H.B. 430); 2015 Md. Laws ___ (Vol. ___, Ch. 302, H.B. 1188); 2016 Md. Laws ___ (Vol. ___, Ch. 25, S.B. 1052). None of these amendments affects the substance of the provisions of TR § 16-205.1 that pertain to this case. Below, we quote TR § 16-205.1's current version.

[3]In Gonce, 446 Md. at 102-03, 130 A.3d at 438, this Court stated:

TR § 16-205.1 incorporates "implied consent" in that TR § 16-205.1 provides that any individual who drives a vehicle in Maryland is deemed to have consented to take a chemical test—usually, a breath test—to measure alcohol concentration, if stopped by a law enforcement officer with reasonable grounds to believe that the person has been driving under the influence of alcohol. Despite TR § 16-205.1's declaration of implied consent by all drivers, TR § 16-205.1 recognizes that a driver detained by a law enforcement officer may refuse to take the [alcohol concentration] test. But

In this case, Sundar Seenath ("Seenath"), Respondent, a holder of a commercial driver's license, contends that the Advice of Rights form violates due process under the United States Constitution and the Maryland Declaration of Rights because the form does not advise that a holder of a commercial driver's license who drives a non-commercial motor vehicle and fails an alcohol concentration test—by taking an alcohol concentration test that indicates an alcohol concentration of 0.08 or higher[4]—is ineligible for a

the time for making that decision is limited—alcohol concentration is transient, and any test must be conducted within two hours of the stop.

The phrase "administrative per se" refers to the administrative consequences of a refusal to take the [alcohol concentration] test, or of test results that reveal that the driver has an alcohol concentration above certain levels (regardless of whether the driver otherwise appears to be impaired). In both cases, TR § 16-205.1 provides for an automatic suspension of the driver's license for specified periods. The license suspension is an administrative sanction that is distinct from any criminal prosecution of the driver that might also ensue.

Under TR § 16-205.1, a detained driver thus has a choice to make—a choice with legal consequences. On the one hand, refusing the [alcohol concentration] test carries a sure suspension; on the other, taking the [alcohol concentration] test may result in no sanction at all, or in a significant suspension plus an increased potential for criminal prosecution, depending on the [alcohol concentration] test result.

(Quoting Motor Vehicle Admin. v. Deering, 438 Md. 611, 612-13, 92 A.3d 495, 496-97 (2014)) (brackets omitted).

[4]Alcohol concentration is measured either in grams of alcohol per 100 milliliters of blood, or in grams of alcohol per 210 liters of breath. If a driver is driving a commercial motor vehicle, then the driver fails an alcohol concentration test if the result is an alcohol concentration of at least 0.04. See TR § 16-812(a)(4) ("The [MVA] shall disqualify any individual from driving a commercial motor vehicle for a period of 1 year if . . . [t]he individual drives or attempts to drive a commercial motor vehicle while the alcohol concentration of the person's blood or breath is 0.04 or greater[.]").

"restrictive license," which allows a driver to drive only for certain purposes, for example, in the course of employment.

In a petition for a writ of *certiorari*, the MVA raised the following issue: "Does the standard Advice of Rights form (DR-15) provide the necessary information to a driver who holds a commercial driver's license of the consequences of submitting to a test of blood alcohol content if the driver's results are 0.08 or more?" We answer this question "yes," and hold that the Advice of Rights form is not misleading as to the eligibility for a restrictive license of a holder of a commercial driver's license and that the Advice of Rights form comports with due process.

## BACKGROUND

### Facts

On February 18, 2015, Officer Romack[5] of the Montgomery County Police Department issued to Seenath an "Officer's Certification and Order of Suspension" that contained the following facts, which we summarize. At 10:55 p.m. on February 18, 2015, Officer Norizn[6] saw that Seenath was driving a 2004 Ford pickup—*i.e.*, a non-commercial motor vehicle—south on Maryland Route 355 near the intersection with Redland Boulevard. Seenath was stopped for changing lanes in an unsafe manner while the Ford pickup was close to another vehicle. At least one of the officers noticed that Seenath had bloodshot eyes and a strong odor of alcohol. One of the officers administered the three-

---

[5]The record does not reveal Officer Romack's first name.
[6]The record does not reveal Officer Norizn's first name.

part Standardized Field Sobriety Test.[7]

Although the Officer's Certification and Order of Suspension does not make clear the results of the three-part Standardized Field Sobriety Test,[8] an administrative law judge found that the evidence of Seenath's intoxication included his "poor performance on" the

---

[7]In Gonce, 446 Md. at 105 n.3, 130 A.3d at 439 n.3, this Court described the three-part Standardized Field Sobriety Test as follows:

> The three-part Standardized Field Sobriety Test endorsed by the National Highway Traffic and Safety Administration consists of the horizontal gaze nystagmus, walk-and-turn, and one-leg stand:
>
> Horizontal Gaze Nystagmus: This term refers to the involuntary jerking of the eye that occurs naturally when the eye gazes to the side. But this jerking (or nystagmus) is exaggerated when someone is impaired by alcohol. Officers look for three indicators of impairment in each eye: inability to follow a moving object smoothly; distinct eye-jerking when eye is at maximum deviation; and eye-jerking within forty-five degrees of center.
>
> Walk and Turn: The purpose of this test, determined to be easily done by most unimpaired people, tests the suspect's ability to complete tasks with divided attention. This is administered by requiring the suspect to take nine steps, heel-to-toe, along a straight line; turn on one foot; and then return in the same manner in the opposite direction.
>
> One-Leg Stand: Suspects are asked to stand with one foot about six inches off the ground and count for thirty seconds. Swaying while balancing, using arms to balance, hopping, or putting the foot down indicate possible impairment.

(Brackets, citation, and italics omitted).

[8]The Officer's Certification and Order of Suspension states the following under "Reasonable Grounds": "[Horizontal gaze nystagmus.] Did not follow ABC until U. Then VZ[. Walk and turn] on 3x5 too soon[.] Missed 3 of[] 7. R arms 11 up 11 back [one-leg stand.]" (Some capitalization omitted). Ostensibly, the term "ABC" referred to the "ABC test," in which a law enforcement officer asks a suspect to recite some or all of the alphabet. See ABC Test, FieldSobrietyTests.org, http://www.fieldsobrietytests.org/abctest.html [https://perma.cc/55WJ-KJWX]. The ABC test is not part of the three-part Standardized Field Sobriety Test. See id.

three-part Standardized Field Sobriety Test. According to the Officer's Certification and Order of Suspension, Seenath took a preliminary breath test, which indicated an alcohol concentration of 0.161.

Officer Romack arrested Seenath and provided him with an Advice of Rights form. The Advice of Rights form, which was labeled "DR-15," had been produced in November 2012, and stated in pertinent part:

> You have been stopped or detained[,] and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requiring that you be asked to submit to a test under [TR] § 16-205[.]1 []. In this situation, the law deems that you have consented to take a test to measure the alcohol concentration or drug or controlled dangerous substance content in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of[,] or life-threatening injury to[,] another person[.]
>
> **Suspension of Your Maryland Driver's License or Driving Privilege:**
> If you refuse to submit to the test, or submit to the test and the result indicates an alcohol concentration of 0.08 or more at the time of testing, your Maryland driver's license will be confiscated, you will be issued an Order of Suspension[,] and, if eligible, a temporary license [that will be] valid for 45 days[.] The following periods of suspension shall be imposed against your license or privilege to drive in Maryland[.]
> **If your test result is an alcohol concentration of at least 0.08 but less than 0.15: The suspension will be 45 days for a first offense and 90 days for a second or subsequent offense.**
> **If your test result is an alcohol concentration of 0.15 or more: The suspension will be 90 days for a first offense and 180 days for a second or subsequent offense.**
> **If you refuse to submit to a test: The suspension will be 120 days for a first offense and one (1) year for a second or subsequent offense.** An additional criminal penalty of not more than $500 or imprisonment for not more than 2 months[,] or both, may be imposed under [TR] § 27-101(x) [] if you are convicted of a drunk or drugged driving offense under [TR] § 21-902, and the judge or jury finds beyond a reasonable doubt that you knowingly refused to take a test arising out of the same circumstances[.] If you hold a commercial driver's license [] and were driving a non-commercial motor vehicle when you were stopped, and refuse to submit to a test, your

- 5 -

[commercial driver's license] or privilege will be disqualified for one (1) year for a first offense[,] or for life if your [commercial driver's license] or privilege has been previously disqualified for at least one (1) year under [TR] § 16-812(a) or (b) [], a federal law, or any other [S]tate's law[.] If you were driving a commercial motor vehicle and refuse the test, your [commercial driver's license] or privilege will be disqualified as set forth below[.]

**Modification of the Suspension or Issuance of a Restrictive License:**

**If your test result is an alcohol concentration of 0.08 but less than 0.15:** The suspension may be modified or a restrictive license issued at a hearing in certain circumstances[.]

**If you refuse a test, or take a test with a result of 0.15 or more: You will be ineligible for modification of the suspension or issuance of a restrictive license, unless you participate in the Ignition Interlock System Program under [TR] § 16-404.1 [].** This program requires the vehicle(s) [that] you drive to be equipped with a device that prevents you from operating it if you have alcohol in your blood[.] At a hearing, if you request one, an administrative [law] judge may modify a suspension by permitting you to participate in the Ignition Interlock System Program for one year, but is not required to do so[.] **Instead of requesting a hearing, you may elect to participate in the Ignition Interlock System Program for one year**, instead of the period of suspension, if the following conditions are met[:] 1) your driver's license is not currently suspended, revoked, canceled, or refused, 2) you were not charged with a moving violation arising out of the same circumstances as the Order of Suspension that involved the death of, or serious physical injury to, another person, and 3) within thirty (30) days of the date of this Order of Suspension[,] you[:] a) elect in writing to participate in the Ignition Interlock System Program for one year, instead of requesting a hearing, and b) surrender a valid Maryland driver's license or sign a statement certifying that the license is no longer in your possession[.] An ignition interlock election form is located on the reverse side of the driver's copy of the Order of Suspension[.]

**You Have the Right to Request an Administrative Hearing:**
You may request an Administrative Hearing at any time within 30 days of the date of the Order of Suspension to show cause why your driver's license or privilege should not be suspended[.] You must request a hearing within 10 days of the date of the Order of Suspension to [e]nsure that your privilege to drive is not suspended prior to your hearing[.] Your request for a hearing must be made in writing[.] You may use the "Hearing Request" form if available[.] Send your request to the Office of Administrative Hearings at 11101 Gilroy Rd[.], Hunt Valley, MD 21031-1301[.] You must include a check or money order for $150[.]00, which is the required filing fee, made

payable to the "Maryland State Treasurer[.]" Your request for a hearing will be invalid if submitted without the required $150[.]00 filing fee (or applicable fee waiver)[.]

**Offenses Occurring While Driving a Commercial Motor Vehicle:** In addition to any suspension for a test failure or refusal, if you were operating a commercial motor vehicle and your test result indicates an alcohol concentration of 0[.]04 or more, or you refused to submit to a test, your commercial driver's license or privilege shall be disqualified one (1) year for a first offense, or 3 years for a first offense [that was] committed while transporting hazardous materials [that are] required to be placarded, and disqualified for life if your commercial driver's license has been previously disqualified for at least one (1) year under [TR ]§16-812(a) or (b), a federal law, or any other [S]tate's law[.]

**Your Driver's license or Privilege will be Suspended on the 46th Day after the Order of Suspension if:** You do not request a hearing within 10 days of the date of the Order of Suspension[,] or, if eligible, you do not elect within 30 days of the Order of Suspension to participate in the Ignition Interlock System Program for one (1) year instead of requesting a hearing[.] If you submit a valid hearing request, a suspension will not be imposed unless a decision is rendered against you, or if you fail to appear for the hearing[.]

**Certification:** I, the Undersigned [Law Enforcement] Officer, certify that I have advised the driver of the above[-]stated Advice of Rights, including the sanctions imposed for[:] 1) a refusal to take a test, 2) a test resulting in an alcohol concentration of at least 0[.]08 but less than 0[.]15, 3) a test resulting in an alcohol concentration of 0[.]15 or more, and 4) disqualifications for persons holding a commercial driver's license[.]

I, the undersigned officer, have provided the driver with the aforementioned in[:] English and Spanish[.]

Read Before Signing: I, the undersigned driver, acknowledge that I have been read[,] or I have read[,] the above[-]stated Advice of Rights as certified by the [law enforcement] officer[.] I understand that this requested test is in addition to any preliminary tests that were taken[.]
Having been so advised, do you now agree to submit to a test? (Officer check reply)

(Emphasis in original). At 11:37 p.m. on February 18, 2015, Seenath consented to take an

alcohol concentration test; the box next to the words "Yes - Agree to submit to an alcohol

- 7 -

concentration test" on the Advice of Rights form was checked; and Seenath signed the form.

According to a "Notification to Defendant of Result of Test for Alcohol Concentration" (some capitalization omitted), at 11:47 p.m. on February 18, 2015, a specimen of Seenath's breath was collected; an alcohol concentration test of Seenath's breath indicated an alcohol concentration of 0.15. According to the Officer's Certification and Order of Suspension, Officer Romack confiscated Seenath's commercial driver's license and issued Seenath a temporary driver's license, which would be valid for 45 days; starting on the forty-sixth day, Seenath's commercial driver's license would be suspended for 90 days.

**Proceedings Before the Administrative Law Judge**

Seenath requested an administrative hearing. On May 27, 2015, an administrative law judge ("the ALJ") of the Office of Administrative Hearings conducted a hearing, at which Seenath was represented by counsel. Without objection, the ALJ admitted into evidence, among other things, the Officer's Certification and Order of Suspension, the Advice of Rights form, and the Notification to Defendant of Result of Test for Alcohol Concentration.

Through counsel, Seenath moved that no action be taken with respect to the suspension of his commercial driver's license on the ground that the Officer's Certification and Order of Suspension did not state reasonable grounds for requesting an alcohol concentration test. Specifically, Seenath's counsel stated that the handwritten notations

under "REASONABLE GROUNDS" were "impossible to interpret[.]"[9]  The ALJ denied the motion on the ground that the strong odor of alcohol on Seenath was sufficient to establish reasonable grounds for requesting an alcohol concentration test.

Seenath testified at the administrative hearing that he had participated in alcohol counseling; that he owned his own business, SS Trucking, of which four dump trucks were a part; and that he drove a dump truck five to six days per week.  Seenath did not testify about any matter with regard to his signing or understanding of the Advice of Rights form.

After testifying, Seenath, through counsel, again moved for no action with respect to the suspension of his commercial driver's license, this time on the ground that the Advice of Rights form "did not fully advise him of all the potential consequences."  Specifically, Seenath's counsel argued that the Advice of Rights form did not advise that, if a commercial driver's license holder's license is suspended, the driver cannot have access to a commercial driver's license through a restrictive license or participation in the Ignition Interlock System Program.  Seenath's counsel stated:

> [T]his form is particularly deceptive to someone who is in [Seenath]'s position because[,] with regard to a [commercial driver's license], the only thing that it alleges is, look, if you refuse, you're going to lose your [commercial driver's license] for a year.  And[,] by asserting that and not mentioning the other aspect[—]that[,] if you get any modification, you're also going to lose your [commercial driver's license—i]t creates the impression that the only way [that] you're going to lose your [commercial driver's license] is if you refuse.  So [Seenath] then goes ahead and he takes the test with a form that leads someone to believe [that] you'll be okay, you'll get to keep your [commercial driver's license], you can even put an [ignition i]nterlock [system] in a dump truck if you need to and keep on driving, you might get a restrict[ive] license and keep on driving.  So[,] when [Seenath] comes into my office, I have to tell him that, no, this form is incorrect as it

---

[9]See supra Footnote 8.

applies to you. You are subject to a different aspect of the law, [Code of Maryland Regulations ("COMAR") 11.11.12.07,] which is not mentioned in this [Advice of Rights] form.

(Paragraph break omitted). COMAR 11.11.12.07A states: "The [MVA] may not issue any type of temporary, conditional, or work[-]restricted license permitting an individual to drive a commercial motor vehicle during any period in which the individual's driving privilege is disqualified, refused, cancelled, suspended, or revoked in this or any other state in accordance with [TR] §[ ]16-808[ (Persons Ineligible to Drive Commercial Motor Vehicles)] and 49 [Code of Federal Regulations ("CFR")] §[ ]384.210 [(Limitation on Licensing)]."

The ALJ ruled as follows:

I'm going to respond to your [m]otion, first with a common[]sense response, and then cite case law. The common[]sense response is, if a driver is driving with alcohol in his or her system and the amount of the alcohol is [0].15 or greater, if the driver would submit to the [alcohol concentration] test, then a [0].15 or greater . . . would result in the possibility of a 90-day suspension[,] or[,] in the alternative, the Ignition Interlock [System Program]. If the driver has a [c]ommercial [d]river's [l]icense, that means that the driver[,] under either the circumstance of taking the [alcohol concentration] test or refusing the [alcohol concentration] test[,] would face suspension[,] and, therefore, the loss of the [commercial driver's license]. I don't believe [that] there is a requirement that the driver be advised of this aspect because[,] under either circumstance, no matter what decision the driver would make, the [commercial driver's license] would have to be converted to a non[-]commercial license. There's no decision [that] the driver could make with [0].15 or greater in his or her system that would not result in the [commercial driver's license's] being disqualified. The case law aspect in light of that common[]sense factual argument, I have to go back to Hare v[. Motor Vehicle Admin.], 326 Md. 296[, 604 A.2d 914 (1992)], and Hare generally is not cited anymore because the [General Assembly] amended [TR] 16-205.1. But the principle in Hare that was announced is still valid[,] and that is, due process does not require that the driver be told of every conceivable incentive for taking a chemical test for alcohol[,] or even[] one additional incentive [that is] not required by [TR] 16-205.1. And[,] in fact, the law

favors the taking of the [alcohol concentration] test.  This is actually not a refusal case.  But again, the consequences were described in the [Advice of Rights form], the eligibility for the Ignition Interlock [System Program], and not every conceivable outcome has to be explained.  So[,] for those reasons[,] I am going to deny your motion.

(Italics and paragraph breaks omitted).  Seenath's counsel responded:

[I]f the MVA and the case law and the courts are going to say[,] use this form, right, give him some advice, the advice should be accurate. . . . [I]f you're going to advise someone of these rights, you got to tell them the significant things, and the significant thing being, he's not eligible really for a restrict[ive] license and keeping his [commercial driver's license].

The ALJ stated: "[Y]our argument is preserved[.]"

Through counsel, Seenath declined to participate in the Ignition Interlock System Program.  In making conclusions of law, the ALJ stated:

You argued that[,] because you had a [commercial driver's license], the Advice of Rights [form] did not fully inform you of the administrative sanctions to be imposed.  However, the consequences of refusing or taking the [alcohol concentration] test and scoring [0].15 or higher would be the same for a [commercial driver's license's] disqualification.  Hare[], 326 Md. 296[, 604 A.2d 914] indicates [that] the drivers need not be advised of every conceivable outcome concerning submitting to or refusing an alcohol [concentration] test.  Hill v[. Motor Vehicle Admin.], 4[15] Md. 231[, 999 A.2d 1019] (2010) addressed the [commercial driver's license] issue vis-à-vis[] the participation of the Ignition Interlock [System P]rogram.

(Italics and paragraph breaks omitted).  The ALJ concluded that Seenath had violated TR § 16-205.1, and suspended Seenath's commercial driver's license for 90 days.  On the same day as the administrative hearing, the ALJ issued an order to the same effect.  As a result of having consented to take the alcohol concentration test—as opposed to refusing to take the alcohol concentration test—Seenath's ability to drive commercial motor vehicles was **not** disqualified for one year.

**Proceedings in the Circuit Court**

On June 4, 2015, Seenath petitioned for judicial review. On October 21, 2015, the Circuit Court for Montgomery County ("the circuit court") conducted a hearing. The circuit court reversed the decision of the ALJ and ruled in pertinent part as follows:

> [T]he [Advice of Rights] form need not advise a driver of every possible contingency that might be available with regard to the suspension of his [or her] driver's license. However, the [Advice of Rights] form must advise the driver of the sanctions that the [General Assembly] had mandated for inclusion in the form, and those sanctions are found in [TR §] 16-205.1 []. But the [Advice of Rights form] must also inform the driver of sanctions that are required, not mere potential sanctions. It's also clear that the continued possession of a driver's license is essential to earning a livelihood, and it cannot be suspended without due process of law. Due process requires that the officer advise the driver of the applicable sanctions [that] exist. It is clear that the suspension of a [commercial driver's] license for taking and failing a breath test is a certainty. The holder of a [commercial driver's] license will receive a 45-day suspension for a first test failure and a 90-day suspension for a subsequent failure or a[n alcohol concentration] test result above a [0].15. . . . It fails to adequately advise the petitioner of the sanctions that he [or she] faces for failing to pass the breathalyzer test. It's particularly egregious . . . when the [A]dvice of [R]ights [form] . . . partially address[es] the consequences of refusing to submit to a[n alcohol concentration] test while driving a non-commercial motor vehicle while holding a commercial driver's license, but then fails to go on to advise the petitioner of the consequences of failing to pass the breathalyzer test. Due process dictates that he be so advised. The law requires that he be so advised. Accordingly, I'm going to reverse the decision of the [ALJ], [and] vacate the suspension that was imposed.

(Paragraph breaks omitted). On the same day as the hearing, the circuit court issued an order to the same effect.

Afterward, on November 25, 2015, the MVA petitioned for a writ of *certiorari*. On January 27, 2016, this Court granted the petition. See Motor Vehicle Admin. v. Seenath, 446 Md. 218, 130 A.3d 507 (2016).

## DISCUSSION

### The Parties' Contentions

The MVA contends that the Advice of Rights form that Seenath signed satisfied due process. The MVA argues that Seenath's right to due process was not violated because the Advice of Rights form did not prejudice Seenath, a first-time offender who chose to consent to take an alcohol concentration test and whose commercial driver's license was suspended for 90 days due to an alcohol concentration of 0.15; as the Advice of Rights form stated, Seenath's commercial driver's license would have been suspended for 120 days if Seenath had chosen to refuse to take an alcohol concentration test, and his ability to drive commercial vehicles would have been disqualified for one year.

Seenath responds that the Advice of Rights form violated his right to due process because it did not inform him that, if he failed an alcohol concentration test, his commercial driver's license would necessarily be suspended, and he would be ineligible for a restrictive commercial driver's license, even if he participated in the Ignition Interlock System Program. Seenath contends that the Advice of Rights form falsely suggested that, if a commercial driver's license holder drove a non-commercial motor vehicle and failed an alcohol concentration test, then the result would be either no suspension of the commercial driver's license, or a suspension with eligibility for a restrictive commercial driver's license. Seenath argues that, in discussing restrictive licenses, the Advice of Rights form fails to distinguish between commercial driver's licenses and non-commercial driver's licenses.

## Standard of Review

Where, as here, the facts are undisputed, a court determines whether an administrative law judge's decision "is premised upon an erroneous conclusion of law." Hill, 415 Md. at 239, 999 A.2d at 1023 (citation and internal quotation marks omitted). A court reviews without deference an administrative law judge's conclusion as to a matter of constitutional law. See Md. State Comptroller of Treasury v. Wynne, 431 Md. 147, 161, 64 A.3d 453, 461 (2013), aff'd sub nom. Comptroller of Treasury of Md. v. Wynne, ___ U.S. ___, 135 S. Ct. 1787 (2015) ("Because our review of its analysis turns on a question of constitutional law, we do not defer to the agency's determination." (Citation omitted)).

## Implied Consent and Mandatory Suspensions

"We begin by examining the relevant provisions of TR § 16-205.1, the implied consent, administrative per se law." Gonce, 446 Md. at 110, 130 A.3d at 442 (brackets, citation, and internal quotation marks omitted). TR § 16-205.1(a)(2) provides for "implied consent" as follows:

> Any person who drives or attempts to drive a motor vehicle on a highway or on any private property that is used by the public in general in this State is deemed to have consented, subject to the provisions of [Md. Code Ann., Cts. & Jud. Proc. (1973, 2013 Repl. Vol.) ("CJP")] §§ 10-302 through 10-309,[10] to take a test if the person should be detained on suspicion of driving or attempting to drive while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of [TR] § 16-813 [(Driving Motor Vehicle with Alcohol Concentration in Blood or Breath Prohibited)].

---

[10]CJP §§ 10-302 through 10-309 govern both the administration of alcohol concentration tests and drug tests and the admissibility of the results of those tests. No statute in CJP §§ 10-302 through 10-309 is at issue in this case.

- 14 -

Despite TR § 16-205.1(a)(2)'s embodiment of "implied consent," a person cannot be compelled to take an alcohol concentration test unless the "person is involved in a motor vehicle accident that results in the death of, or a life[-]threatening injury to, another person and the person is detained by a police officer who has reasonable grounds to believe that the person has been driving or attempting to drive while" impaired, TR § 16-205.1(c)(1); see TR § 16-205.1(b)(1) ("Except as provided in [TR § 16-205.1](c) [], a person may not be compelled to take a test."). In other words, if a driver has not been involved in a motor vehicle accident that results in death or a life-threatening injury to another person, then the driver may refuse to take an alcohol concentration test. In the absence of a motor vehicle accident that results in death or a life-threatening injury to another person, if a person is detained on suspicion of driving or attempting to drive under the influence of drugs or alcohol, the person is deemed under the implied consent law to have consented to alcohol or drug testing, and is subject to a mandatory suspension of his or her driver's license for not consenting to take a test.

Indeed, refusing to take an alcohol concentration test has serious consequences. If a driver refuses to take an alcohol concentration test, then the MVA must suspend the driver's license for 120 days for a first offense, and must suspend the driver's license for 1 year for a second or subsequent offense. See TR § 16-205.1(f)(4)(i)(5), (f)(8)(v)(5).

Refusing to take an alcohol concentration test has additional consequences for a holder of a Maryland commercial driver's license. Specifically, under TR § 16-205.1(f)(4)(ii)(1):

> In the case of a person operating a commercial motor vehicle or who holds . . . a commercial driver's license who refuses to take a test, [the MVA shall] disqualify the person from operating a commercial motor vehicle for a period of 1 year for a first offense, 3 years for a first offense [that] occurs while transporting hazardous materials [that are] required to be placarded, and for life for a second or subsequent offense [that] occurs while operating any commercial [motor] vehicle[.]

As does refusing to take an alcohol concentration test, failing an alcohol concentration test has serious consequences. The length of the mandatory suspension depends on the driver's alcohol concentration; the higher the driver's alcohol concentration, the longer the mandatory suspension. If a driver was not involved in a motor vehicle accident that resulted in the death of another person, and an alcohol concentration test indicates that the driver's alcohol concentration is at least 0.08 but less than 0.15, then the MVA must suspend the driver's license for 45 days for a first offense, and must suspend the driver's license for 90 days for a second or subsequent offense. See TR § 16-205.1(f)(4)(i)(1), (f)(8)(v)(1). If a driver was not involved in a motor vehicle accident that resulted in the death of another person, and an alcohol concentration test indicates that the driver's alcohol concentration is 0.15 or higher, then the MVA must suspend the driver's license for 90 days for a first offense, and must suspend the driver's license for 180 days for a second or subsequent offense. See TR § 16-205.1(f)(4)(i)(2), (f)(8)(v)(2). All of these mandatory suspensions apply to commercial driver's licenses and non-commercial driver's licenses alike.

**Modifications of Suspensions and Restrictive Licenses**

Under certain circumstances, the MVA may issue a modification of a suspension or a restrictive license, which allows a driver to drive only for certain purposes—for example,

in the course of employment. A driver is eligible for a modification of a suspension or a restrictive license without participation in the Ignition Interlock System Program—which we describe below—only if an alcohol concentration test indicates an alcohol concentration of at least 0.08 but less than 0.15, and, during the past 5 years, the driver's license has not been suspended under TR § 16-205.1 and the driver has not been convicted under TR § 21-902 (Driving While Under the Influence or Impairment of Alcohol or Drugs Prohibited). See TR § 16-205.1(n)(1). TR § 16-205.1(n)(2) describes additional criteria for a modification of a suspension or a restrictive license without participation in the Ignition Interlock System Program as follows:

> The [MVA] may modify a suspension under [TR § 16-205.1] or issue a restrictive license if the [MVA] finds that:
>
> > (i) The licensee is required to drive a motor vehicle in the course of employment;
> >
> > (ii) The license is required for the purpose of attending an alcohol prevention or treatment program;
> >
> > (iii) The licensee has no alternative means of transportation available to or from the licensee's place of employment and, without the license, the licensee's ability to earn a living would be severely impaired;
> >
> > (iv) The license is required for the purpose of obtaining health care treatment, including a prescription, that is necessary for the licensee or a member of the licensee's immediate family and the licensee and the licensee's immediate family have no alternative means of transportation available to obtain the health care treatment; or
> >
> > (v) The license is required for the purpose of attending a noncollegiate educational institution . . . or a regular program at an institution of postsecondary education.

As explained above, however, under TR § 16-205.1(f)(4)(ii)(1), the MVA must "disqualify" a holder of a Maryland commercial driver's license from driving a commercial motor vehicle for at least 1 year if he or she refuses to take an alcohol concentration test. Under that circumstance, the holder of the Maryland commercial driver's license is ineligible for a modification of the disqualification or a restrictive commercial driver's license. See TR § 16-205.1(f)(8)(vii) ("A disqualification of . . . a commercial driver's license is not subject to any modifications, nor may a restricted . . . commercial driver's license be issued in lieu of a disqualification."). In other words, if a holder of a Maryland commercial driver's license refuses to take an alcohol concentration test, then he or she will be disqualified from driving a commercial motor vehicle for at least 1 year, and he or she will be ineligible for a modification of the disqualification or a restrictive commercial driver's license—even if the holder of the Maryland commercial driver's license participates in the Ignition Interlock System Program.

Similarly, if a holder of a Maryland commercial driver's license fails an alcohol concentration test, then he or she is ineligible for a restrictive commercial driver's license—even if the holder of the Maryland commercial driver's license participates in the Ignition Interlock System Program. COMAR 11.11.12.07A provides that "the [MVA] may not issue any type of temporary, conditional, or work[-]restricted license permitting an individual to drive a commercial motor vehicle during any period in which the individual's driving privilege is disqualified, refused, cancelled, suspended, or revoked in this or any other state in accordance with [TR] §[ ]16-808[ (Persons Ineligible to Drive Commercial Motor Vehicles)] and 49 CFR §[ ]384.210 [(Limitation on Licensing)]." Also,

TR § 16-808(a)(5) provides that "[a] person may not drive a commercial motor vehicle on any highway . . . [w]hile the person's driver's license . . . is suspended in this State[.]"

In short, under TR § 16-205.1(f)(8)(vii) and COMAR 11.11.12.07A, there is no such thing as a "restrictive commercial driver's license." A holder of a commercial driver's license may participate in the Ignition Interlock System Program, but doing so will not result in a restrictive commercial driver's license; instead, participation in the Ignition Interlock System Program may result only in a modification of a suspension, under which the driver will be allowed to drive only non-commercial motor vehicles. See, e.g., Hill, 415 Md. at 239, 999 A.2d at 1023 (An administrative law judge modified a suspension of a commercial driver's license so that the driver could drive non-commercial motor vehicles while participating in the Ignition Interlock System Program.).

**Ignition Interlock System Program**

It is possible for the MVA to issue a modification of a suspension or a restrictive license even if a driver refused to take an alcohol concentration test; an alcohol concentration test indicated an alcohol concentration of at least 0.15; or an alcohol concentration test indicated an alcohol concentration of at least 0.08 but less than 0.15, but the driver does not otherwise satisfy TR § 16-205.1(n)'s criteria. See TR § 16-205.1(o)(1). Under these circumstances, the MVA may issue a modification of a suspension or a restrictive license if and only if the driver participates in the Ignition Interlock System Program for 1 year. See TR § 16-205.1(o)(2). "A participant is considered to begin participation in the [Ignition Interlock System] Program when the participant provides evidence of the installation of an ignition interlock system by an approved service provider

in a manner required by the [MVA]." TR § 16-404.1(h). An ignition interlock system is "[a] device [that is] installed in a motor vehicle to determine the driver's [breath] alcohol [concentration] before the vehicle can be started and to prevent [the motor vehicle's] being started if the [breath] alcohol [concentration] registers as being above the acceptable limit." Ignition-Interlock Device, Black's Law Dictionary (10th ed. 2014).

### Advisements and Other Actions that TR § 16-205.1(b) Requires

TR § 16-205.1(b) requires a law enforcement officer to advise a detained driver of certain provisions of TR § 16-205.1. The advisements that pertain to all holders of Maryland driver's licenses are as follows:

> [T]he detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the [MVA] shall:
>
> (i) In the case of a person licensed under this title:
>
> 1. Except as provided in items 2, 3, and 4 of this item, for a test result indicating an alcohol concentration of 0.08 or more at the time of testing:
> A. For a first offense, suspend the driver's license for 45 days; or
> B. For a second or subsequent offense, suspend the driver's license for 90 days;
>
> 2. Except as provided in item 4 of this item, for a test result indicating an alcohol concentration of 0.15 or more at the time of testing:
> A. For a first offense, suspend the person's driving privilege for 90 days; or
> B. For a second or subsequent offense, suspend the person's driving privilege for 180 days;
>
> 3. Except as provided in item 4 of this item, for a test result indicating an alcohol concentration of 0.08 or more at the time of

testing, if the person was involved in a motor vehicle accident that resulted in the death of another person:

> A. For a first offense, suspend the person's driving privilege for 6 months; or
>
> B. For a second or subsequent offense, suspend the person's driving privilege for 1 year;

> 4. For a test result indicating an alcohol concentration of 0.15 or more at the time of testing, if the person was involved in a motor vehicle accident that resulted in the death of another person:
>
> A. For a first offense, suspend the person's driving privilege for 1 year; or
>
> B. For a second or subsequent offense, revoke the person's driving privilege; or

> 5. For a test refusal:
>
> A. For a first offense, suspend the driver's license for 120 days; or
>
> B. For a second or subsequent offense, suspend the driver's license for 1 year[.]

TR § 16-205.1(b)(1)(i).

TR § 16-205.1(b)(1)(iii) requires that detaining officers advise holders of Maryland commercial driver's licenses as follows:

> [T]he detaining officer shall advise the person that, on receipt of a sworn statement from the officer that the person was so charged and refused to take a test, or was tested and the result indicated an alcohol concentration of 0.08 or more, the [MVA] shall . . . [, i]n addition to any applicable driver's license suspensions authorized under [TR § 16-205.1], in the case of a person operating a commercial motor vehicle or who holds . . . a commercial driver's license who refuses to take a test:

> 1. Disqualify the person's . . . commercial driver's license for a period of 1 year for a first offense, 3 years for a first offense which occurs while transporting hazardous materials [that are] required to be placarded, and disqualify for life if the person's . . . commercial driver's license has been previously disqualified for at least 1 year under:
>
> A. [TR] § 16-812(a) or (b) [];
> B. A federal law; or

C. Any other [S]tate's law[.]

TR § 16-205.1(b)(1)(iii).  TR § 16-205.1(b)(1)(iii) does not require that a detaining officer advise the holder of a commercial driver's license that a restrictive commercial driver's license is not available to the holder of the commercial driver's license.

Before a driver either consents or refuses to take an alcohol concentration test, TR § 16-205.1(b)(2) requires additional advisements and other actions by a law enforcement officer as follows:

> Except as provided in [TR § 16-205.1](c) [], if a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, while impaired by alcohol, while so far impaired by any drug, any combination of drugs, or a combination of one or more drugs and alcohol that the person could not drive a vehicle safely, while impaired by a controlled dangerous substance, in violation of an alcohol restriction, or in violation of [TR] § 16-813 [], and who is not unconscious or otherwise incapable of refusing to take a test, the police officer shall:
>
> (i) Detain the person;
>
> (ii) Request that the person permit a test to be taken;
>
> (iii) Advise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing;
>
> (iv) Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program under [TR] § 16-404.1 [], that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing; and
>
> (v) Advise the person of the additional criminal penalties that may be imposed under [TR] § 27-101(x) [] on conviction of a violation of [TR] § 21-902 [] if the person knowingly refused to take a test arising out of the same circumstances as the violation.

If a driver either refuses to take an alcohol concentration test or takes an alcohol concentration test that indicates an alcohol concentration of at least 0.08, TR § 16-205.1(b)(3) requires additional advisements and other actions by a law enforcement officer; among other things, the law enforcement officer must:

    (i) Confiscate the person's driver's license issued by this State;

    (ii) Acting on behalf of the [MVA], personally serve an order of suspension on the person;

    (iii) Issue a temporary license to drive;

    (iv) Inform the person that the temporary license allows the person to continue driving for 45 days if the person is licensed under this title;

    (v) Inform the person that:

        1. The person has a right to request, at that time or within 10 days, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing, and the hearing will be scheduled within 45 days; and

        2. If a hearing request is not made at that time or within 10 days, but within 30 days the person requests a hearing, a hearing to show cause why the driver's license should not be suspended concerning the refusal to take the test or for test results indicating an alcohol concentration of 0.08 or more at the time of testing will be scheduled, but a request made after 10 days does not extend a temporary license issued by the police officer that allows the person to continue driving for 45 days;

    (vi) Advise the person of the administrative sanctions that shall be imposed in the event of failure to request a hearing, failure to attend a requested hearing, or upon an adverse finding by the hearing officer;

    (vii) Inform the person that, if the person refuses a test or takes a test that indicates an alcohol concentration of 0.15 or more at the time of testing, the person may participate in the Ignition Interlock System Program under

- 23 -

[TR] § 16-404.1 [] instead of requesting a hearing under this paragraph, if the following conditions are met:

> 1. The person's driver's license is not currently suspended, revoked, canceled, or refused;

> 2. The person was not charged with a moving violation arising out of the same circumstances as an administrative offense under [TR § 16-205.1] that involved a death of, or serious physical injury to, another person; and

> 3. Within the same time limits set forth in item (v) of this paragraph, the person:
> > A. Surrenders a valid Maryland driver's license or signs a statement certifying that the driver's license is no longer in the person's possession; and
> > B. Elects in writing to participate in the Ignition Interlock System Program for 1 year[.]

To assist law enforcement officers with making the advisements that TR § 16-205.1(b) requires, the MVA drafted, and has periodically updated, the Advice of Rights form—which, as its name suggests, advises detained drivers of certain consequences of either failing or refusing to take an alcohol concentration test. See Hill, 415 Md. at 236-37, 999 A.2d at 1022 ("[The Advice of Rights form] was designed by the MVA to explain to persons detained under [TR §] 16-205.1 that they have the right to refuse an alcohol concentration test, as well as to explain the potential sanctions that could arise from either taking and 'failing' the test (i.e., showing a systemic alcohol concentration of 0.08 percent or greater) or refusing to take the test at all.").

## Due Process

"No State shall . . . deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV § 1; see also Md. Decl. of Rts. Art. 24 ("[N]o

- 24 -

[person] ought to be . . . deprived of his [or her] life, liberty[,] or property, but . . . by the Law of the land.").

This is not the first case in which this Court has addressed the issue of whether an Advice of Rights form violated a driver's right to due process. The first such case was Hare, 326 Md. at 306, 604 A.2d at 918-19, in which this Court held that the then-current Advice of Rights form did not violate a driver's right to due process. A law enforcement officer arrested the driver for driving while impaired, and read to the driver from the Advice of Rights form. See id. at 298, 604 A.2d at 914-15. The law enforcement officer requested that the driver consent to take an alcohol concentration test, which the driver refused to take; accordingly, the MVA suspended his driver's license for 120 days. See id. at 298-99, 604 A.2d at 915. The driver requested an administrative hearing, at which he testified that he had not known that he would be ineligible for a modification of a suspension or a restrictive license if he refused to take an alcohol concentration test;[11] the driver testified that, had he known as much, he probably would have consented to take an alcohol concentration test. See id. at 297-99, 604 A.2d at 914-15. An administrative law judge imposed the same sanction that the MVA did. See id. at 299, 604 A.2d at 915.

In this Court, the driver contended that the Advice of Rights form violated his right

_____

[11]As noted above, today, the MVA may issue a modification of a suspension or a restrictive license to a driver who refused to take an alcohol concentration test, if and only if the driver participates in the Ignition Interlock System Program for 1 year. See TR § 16-205.1(o). This was not yet the case at the time of Hare, 326 Md. 296, 604 A.2d 914, which this Court issued in 1992; the General Assembly did not enact TR § 16-404.1, which authorized the MVA to establish the Ignition Interlock System Program, until 1996. See 1996 Md. Laws 3676, 3679 (Vol. VI, Ch. 648, H.B. 1149).

to due process because it did not fully advise him of administrative sanctions. See id. at 301, 604 A.2d at 916. This Court explained the right to due process as follows:

> The continued possession of a driver's license may become essential to earning a livelihood; as such, it is an entitlement [that] cannot be taken without the due process [that is] mandated by the Fourteenth Amendment. . . . . What process a [person] is due is, of course, dependent upon the facts and circumstances of the case. To make that determination, we have to examine the importance of the life, liberty, or property interest at stake and the extent to which the questioned procedure might produce the possibility of uninformed decision-making. Against the individual's interest, we must weigh the State's legitimate competing interest, which necessarily includes the avoidance of the increased administrative or fiscal burdens resulting from the requested procedure.
>
> As we have seen, [the driver]'s interest in his driver's license is an important one. Juxtaposed against that interest is the State's interest in protecting its citizens from drunk drivers[,] and, as a means of doing so, encouraging suspected drunk drivers to take the [alcohol concentration] test, thus facilitating their prosecution. The final factor to be considered is whether the procedure chosen enhances informed decision-making.

Id. at 301, 303, 604 A.2d at 916, 917 (brackets, citations, ellipsis, and internal quotation marks omitted).

This Court rejected the driver's contention that the Advice of Rights form violated his right to due process, stating:

> A driver need not be told of every conceivable incentive for taking a[n alcohol concentration test] or, for that matter, even one additional incentive [that is] not required by [TR § 16-205.1]. This conclusion is, we think, buttressed both by Maryland law and [by] common sense. As to the latter, when it is once determined that a driver must be apprised of additional incentives, there is no rational basis for determining which of those additional incentives must be covered and which are not of sufficient value to merit inclusion in the advice given the arrestee. . . . [D]ue process does not always require the State affirmatively to inform a [person] of the availability of options that might influence decision-making. It requires no more than that the State not mislead the [person] or construct road[]blocks, thus unduly burdening that decision-making. . . .

- 26 -

Having provided the advice [that was] mandated by [TR § 16-205.1], the [law enforcement] officer was not required to anticipate, or guess at, what incentive would have caused the driver to take the [alcohol concentration] test. Nor was he, as a matter of due process, required to provide any advice other than that [which TR § 16-205.1] prescribed. Indeed, had he undertaken to provide additional information[,] and it turned out to be misleading or inaccurate, that, in itself, may have been a denial of due process. Due process does not require the officer to weigh the relative merits, for encouragement value, of particular consequences flowing from the decision whether to take or refuse a[n alcohol concentration] test.

Id. at 304, 306, 604 A.2d at 918-19 (citations and paragraph break omitted).

In Motor Vehicle Admin. v. Chamberlain, 326 Md. 306, 319-20, 604 A.2d 919, 925 (1992), this Court commented on a driver's right to due process in the form of being advised of administrative sanctions. In Chamberlain, id. at 309, 604 A.2d at 920, a law enforcement officer arrested the driver for driving while impaired, and read to the driver from the then-current Advice of Rights form. The law enforcement officer requested that the driver consent to take an alcohol concentration test, which the driver refused to take; accordingly, the MVA suspended his driver's license for 120 days. See id. at 310-11, 604 A.2d at 920-21. The driver requested an administrative hearing, at which he asserted that he had not been adequately advised of the administrative sanctions for failing or refusing to take an alcohol concentration test. See id. at 311, 604 A.2d at 921. An administrative law judge imposed the same sanction that the MVA did. See id. at 311, 312, 604 A.2d at 921.

The driver petitioned for judicial review, and a trial court reversed the administrative law judge's decision, concluding that the driver had not been fully advised of administrative sanctions because he had not been informed that a failure of an alcohol

- 27 -

concentration test could result in a modification of a suspension or a restrictive license. See id. at 312, 604 A.2d at 922. Although the trial court concluded that the omission of the advisement was a violation of the driver's right to due process, see id. at 312, 604 A.2d at 922, this Court expressly declined to address the issue as to due process because the driver did not pursue the issue in this Court, see id. at 308 n.2, 604 A.2d at 920 n.2 ("In his brief, not only does [the driver] refrain from making any constitutional arguments . . . , but [also,] he conceded at oral argument that he did not raise the constitutional issues in the first instance, the trial court having done so on its own, and, further, that his research did not support the [trial] court's determinations. Thus, we conclude that the [driver] no longer wishes to pursue the constitutional issues. We will not, therefore, further consider them.").

In this Court, the driver contended that TR § 16-205.1 required a law enforcement officer to inform drivers that, unlike a refusal to take an alcohol concentration test, a failure of an alcohol concentration test could result in a modification of a suspension or a restrictive license. See id. at 314, 604 A.2d at 922. This Court rejected the driver's contention, and concluded that TR § 16-205.1 does not require a law enforcement officer to give any advisements that are not already expressly listed in TR § 16-205.1(b). See id. at 317, 604 A.2d at 924 ("The [General Assembly] . . . explicitly set out in [TR] § 16-205.1(b)(1) what a driver must be told upon detention."). This Court also noted that "the *possible* eligibility for" a modification of a suspension or a restrictive license was a "reward" or "incentive" that was not a "sanction" of which a law enforcement needed to

inform a driver.  See id. at 318, 604 A.2d at 924 (emphasis in original).[12]

As noted above, this Court expressly declined to address whether the omission of the advisement about modifications of suspensions and restrictive licenses was a violation of the driver's right to due process, see Chamberlain, 326 Md. at 308 n.2, 604 A.2d at 920 n.2; however, in the context of explaining why a modification of a suspension or a restrictive license was a mere possibility rather than a certainty, this Court stated:

> [I]t is not certain that, upon failure of the [alcohol concentration] test, the driver's suspension will be modified or a restrictive license issued.  Thus, any advice that fails to make clear that a reference to modification of suspension or a restrictive license relates to eligibility only is likely to lead to confusion.  In point of fact, telling someone who may or may not meet the statutory prerequisites, as encouragement to take the [alcohol concentration] test, that he or she "may be entitled to a modified suspension or restrictive license," may be not simply inaccurate, and affirmatively misleading, it may not be an incentive at all.  This is especially likely to be the case when the police officer, not having checked the driving record, tells a person who does not meet any of the statutory prerequisites that he or she may qualify for a modification of suspension or restrictive license if he or she takes the [alcohol concentration] test.  And it is also egregious when, though eligible, the person is not absolutely *entitled* to the relief which is the subject of the advice.  Thus, it would be impossible to advise a driver without checking the driving record and, if checked, guessing not only as to the driver's eligibility, but also the likelihood that he or she would be favorably considered.  For this reason as well[,] "sanctions" can only refer to an outcome that is certain to happen.  The suspension of the driver's license must occur whenever the statutory prerequisites have been met, whether the driver refuses the [alcohol

---

[12]In 1993, the General Assembly superseded this Court's holding in Hare, 326 Md. at 304, 306, 604 A.2d at 918-19, and Chamberlain, 326 Md. at 314, 317, 604 A.2d at 922, 924, that TR § 16-205.1 did not require a law enforcement officer to inform drivers that, unlike a refusal to take an alcohol concentration test, a failure of an alcohol concentration test could result in a modification of a suspension or a restrictive license.  Specifically, the General Assembly amended TR § 16-205.1(b) to require a law enforcement officer to advise a detained driver that a refusal to take an alcohol concentration test would result in "ineligibility for modification of a suspension or issuance of a restrictive license[.]"  1993 Md. Laws 2247, 2248-49 (Vol. IV, Ch. 407, S.B. 18).  This language remains in TR § 16-205.1(b).  See TR § 16-205.1(b)(2)(iv).

concentration] test or fails the [alcohol concentration] test after taking it.

Id. at 319-20, 604 A.2d at 925-26 (italics in original) (citations and footnote omitted). In a footnote that immediately followed the words "affirmatively misleading" (as quoted above), this Court observed: "It may be that affirmatively to mislead the driver is to violate the driver's right to due process." Id. at 319 n.9, 604 A.2d at 925 n.9 (citing Hare, 326 Md. at 306, 604 A.2d at 919).

In Hill, 415 Md. at 248, 999 A.2d at 1028-29, this Court held that the then-current Advice of Rights form did not violate a driver's right to due process. In Hill, id. at 236, 999 A.2d at 1022, the driver, a holder of a commercial driver's license, was driving a non-commercial motor vehicle. A law enforcement officer arrested the driver for driving while impaired, and read to the driver the entirety of the Advice of Rights form. See id. at 236, 999 A.2d at 1022. The law enforcement officer requested that the driver consent to take an alcohol concentration test, which the driver refused to take; accordingly, the MVA suspended his commercial driver's license for 120 days and disqualified him from driving a commercial motor vehicle for 1 year. See id. at 238-39, 999 A.2d at 1023. In other words, the driver would be unable to drive any vehicle for 120 days, after which the driver would be able to drive only non-commercial motor vehicles until 1 year had passed since the disqualification began. The driver requested an administrative hearing, at which the driver argued that the Advice of Rights form misled him by failing to state that, if he refused to take an alcohol concentration test, the MVA would necessarily disqualify him from driving a commercial motor vehicle for 1 year, regardless of whether the driver participated in the Ignition Interlock System Program. See id. at 238, 999 A.2d at 1023. An

administrative law judge rejected the driver's contention, modified the suspension so that the driver could drive non-commercial motor vehicles while participating in the Ignition Interlock System Program for 1 year, and otherwise imposed the same sanction that the MVA did. See id. at 238-39, 999 A.2d at 1023.

In this Court, the driver asserted that the Advice of Rights form prejudiced him because he would have consented to taking an alcohol concentration test in the hopes that his alcohol concentration was less than 0.08 had the Advice of Rights form stated that, if the driver refused to take an alcohol concentration test, the MVA would disqualify him from driving a commercial motor vehicle for 1 year, regardless of whether the driver participated in the Ignition Interlock System Program. See id. at 242, 999 A.2d at 1025. The driver contended that the Advice of Rights form misled holders of commercial driver's licenses to believe that they could refuse alcohol concentration tests and avoid being disqualified from driving commercial vehicles by participating in the Ignition Interlock System Program. See id. at 245, 999 A.2d at 1027.

This Court rejected the driver's contention, stating:

[T]he [Advice of Rights] form properly advised [the driver] of the penalties [that] he faced, and did not obstruct [the driver]'s decision-making process. The text of the [Advice of Rights] form is plain. The following language is included under the heading "Suspension of Your Maryland Driver's License or Driving Privilege:"

> **If you refuse to submit to a test:** The suspension will be 120 days for a first offense and one year for a second or subsequent offense. An additional criminal penalty of not more than $500 or imprisonment for not more than 2 months, or both, may be imposed under [TR] § 27-101(x) [] if you are convicted of a drunk or drugged driving offense under [TR] § 21-902, and the judge or jury finds beyond a reasonable doubt that you

- 31 -

knowingly refused to take a test arising out of the same circumstances. **If you hold a commercial driver's license [] at the time you refuse to submit to a test, your [commercial driver's license] or privilege will be disqualified for 1 year.**

(Emphasis added.) This language straightforwardly informs a suspected drunk driver that [commercial driver's license] driving privileges will be suspended for a full year in the event that the driver refuses to submit to an alcohol concentration test. This provision is one of only two references to a [commercial driver's license] on the whole of the [Advice of Rights] form; the second addresses offenses occurring while actually driving a commercial [motor] vehicle. The language reproduced above is unequivocal—it does not offer any suggestion of mitigation or an alternative, nor should it, as no such mitigation or alternative is possible under [TR § 16-205.1].

The heading immediately below this language, entitled "Modification of the Suspension or Issuance of a Restrictive License," is the first place at which the [Advice of Rights] form mentions the possibility of modifying suspensions through the issuance of a restrict[ive] license or participation in the [Ignition] Interlock [System] Program. There are two significant points of interest here. First, as the MVA discusses in its brief, this section explicitly refers to suspensions, and not disqualifications. At no point under this heading does the language of [the Advice of Rights form] discuss disqualified licenses, or use a disjunctive phrase such as "suspension or disqualification" in referring to the [Ignition] Interlock [System] Program. Second, and more significantly, at no point does the language under this heading mention a [commercial driver's license] or commercial driving privileges. Again, there are but two mentions of a [commercial driver's license] on the [Advice of Rights] form, and neither is incorporated into a section addressing mitigation of, or alternatives to, [commercial driver's license] disqualification. On the whole, these passages are clear and unambiguous, and neither create roadblocks to inhibit a driver's decision-making process nor incompletely advise a driver of the applicable sanctions under [TR § 16-205.1].

Id. at 245-46, 999 A.2d at 1027-28 (brackets and footnotes omitted).

This Court summarized its holding as follows: "[The driver]'s due process rights were not violated during his traffic stop because the information [that was] conveyed to him in the [Advice of Rights] form was not misleading, and did not obstruct his ability to

make an informed decision about whether to refuse an alcohol concentration test." Id. at 248, 999 A.2d at 1028.[13]

**As-Applied Challenges and Facial Challenges**

Here, as a preliminary matter, we observe that it is unclear from the proceedings before the ALJ whether Seenath raised an as-applied or a facial constitutional challenge to the Advice of Rights form. An as-applied challenge is "a claim that a statute[14] is unconstitutional on the facts of a particular case or in its application to a particular party." As-Applied Challenge, Black's Law Dictionary (10th ed. 2014). By contrast, a facial challenge is "[a] claim that a statute is unconstitutional on its face — that is, that it always operates unconstitutionally." Facial Challenge, Black's Law Dictionary (10th ed. 2014). In other words, to be successful, a facial challenge "must establish that there is no set of circumstances under which the [statute] would be constitutional[.]" Harrison-Solomon v. State, 442 Md. 254, 287, 112 A.3d 408, 428 (2015) (citation omitted).

A party always has standing to raise an as-applied challenge, but a party has standing

---

[13]In addition to rejecting the driver's contention that the Advice of Rights form was misleading, this Court rejected the driver's contention that the Advice of Rights form was inconsistent with TR § 16-205.1's legislative history, which, according to the driver, indicated that the General Assembly had intended to require a law enforcement officer to inform a driver that, if the driver refused to take an alcohol concentration test, the MVA would disqualify the driver from driving a commercial motor vehicle for 1 year, regardless of whether the driver participated in the Ignition Interlock System Program. See Hill, 415 Md. at 246-47, 999 A.2d at 1028.

[14]Here, the subject of the constitutional challenge is not a statute, but instead a practice—namely, the advisement of rights and consequences in the Advice of Rights form. We note, however, that the Advice of Rights form is derived from TR § 16-205.1. In any event, the framework for the analysis as to as-applied and facial challenges remains the same.

to raise a facial challenge only if the statute or practice that is the subject of the facial challenge may violate a fundamental constitutional right. See Galloway v. State, 365 Md. 599, 616-17, 781 A.2d 851, 861 (2001) ("If the challenged statute . . . encroaches upon fundamental constitutional rights, particularly First Amendment guarantees of free speech and assembly, then the statute should be scrutinized for vagueness on its face. . . . [P]ermitting a defendant to challenge a statute on its face for vagueness becomes a rule of standing which allows a defendant to challenge the validity of a statute even though the statute as applied to the defendant is constitutional." (Citations, footnotes, and internal quotation marks omitted)).

Typically, a facial challenge in which a party contends that a statute is void-for-vagueness arises out of a right under the First Amendment to the United States Constitution. See id. at 616 n.11, 781 A.2d at 861 n.11 ("We have not applied [the void-for-vagueness] standard to a facial challenge other than one implicating First Amendment rights." (Citation omitted)). Other types of facial challenges, however, have arisen out of fundamental constitutional rights other than those that the First Amendment protects. See, e.g., King v. State, 425 Md. 550, 593, 601, 42 A.3d 549, 575, 580 (2012), rev'd, ___ U.S. ___, 133 S. Ct. 1958 (2013) (This Court considered a facial challenge to a DNA collection statute that arose out of the rights under the Search-and-Seizure Clause of the Fourth Amendment to the United States Constitution.); Tyler v. City of Coll. Park, 415 Md. 475, 502, 494, 3 A.3d 421, 436, 431-32 (2010) (This Court considered a facial challenge to a rent control statute that arose out of the rights to due process and equal protection under Article 24 of the Maryland Declaration of Rights.); Griffin v. Bierman, 403 Md. 186, 195-

96, 941 A.2d 475, 480-81 (2008) (This Court considered "a facial challenge to the Maryland foreclosure notice scheme" that arose out of the rights under the Due Process Clauses of the Fourteenth Amendment to the United States Constitution and Article 24 of the Maryland Declaration of Rights. (Footnote omitted)); Chapman v. State, 331 Md. 448, 467, 450, 628 A.2d 676, 686, 677 (1993) (This Court considered a facial challenge to a statute that created an exception to the rule against hearsay "permitting the State to introduce an affidavit of a bank to establish dishonor of a check or the status of an account without requiring any of the bank's employees to testify" where the facial challenge arose out of the rights under the Confrontation Clauses of the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights.).

In this case, the right at issue is not a "right to drive," as there is no such right. See State v. Sullivan, 407 Md. 493, 501, 966 A.2d 919, 923 (2009) ("Driving on the roads of this State is [] not a right, but a privilege." (Citation and internal quotation marks omitted)). Instead, in this case, the right at issue is the right to due process where the State imposes a sanction on a driver's license. See Hill, 415 Md. at 242, 999 A.2d at 1025 ("[T]he continued possession of a driver's license may become essential to earning a livelihood; it is, therefore, an entitlement that may not be taken away without the due process mandated by the Fourteenth Amendment." (Citation and internal quotation marks omitted)); Hare, 326 Md. at 301, 604 A.2d at 916 (same). As did the parties who raised facial challenges that arose out of the right to due process in Tyler, 415 Md. at 502, 494, 3 A.3d at 436, 431-32, and Griffin, 403 Md. at 195-96, 941 A.2d at 480-81, here, Seenath has standing to raise a facial challenge that arises out of the right to due process.

As stated above, it is unclear whether Seenath raised an as-applied challenge or a facial challenge to the Advice of Rights form. At the administrative hearing, Seenath's counsel contended that the Advice of Rights form is "incorrect as it applies to" Seenath. By contrast, in his brief, Seenath argues that the Advice of Rights form gives "erroneous advice [] to [commercial driver's license] holders[.]" And, at oral argument, in response to a question about whether the alleged violation of due process occurred as to Seenath in particular or holders of commercial driver's licenses in general, Seenath's counsel responded: "Both."

In the petition for a writ of *certiorari*, however, the MVA presented an issue that encompasses both an as-applied and a facial challenge: "Does the standard Advice of Rights form (DR-15) provide the necessary information to a driver who holds a commercial driver's license of the consequences of submitting to a test of blood alcohol content if the driver's results are 0.08 or more?" Given that the MVA has framed the issue broadly to include both the as-applied and facial validity of the Advice of Rights form—and, in doing so, undoubtedly seeks guidance from this Court as to the propriety of the Advice of Rights form's future use—we address both the as-applied issue and the facial issue. We address the as-applied issue first. See King, 425 Md. at 593, 42 A.3d at 575 ("It is generally preferable for a court to analyze whether a statute is constitutional under the more narrow as-applied standard first, as a matter of judicial efficiency[,] rather than analyzing the broader facial challenge first." (Citation omitted)).

## As-Applied Challenge

We have no difficulty in concluding that the Advice of Rights form does not violate

the Due Process Clause as applied in this case, as the record contains no indication whatsoever that Seenath was misled by the Advice of Rights form. At the administrative hearing, Seenath did not testify about any matter pertaining to the Advice of Rights form. In other words, Seenath did not testify that he was misled by the Advice of Rights form into consenting to take an alcohol concentration test; that he might have chosen to refuse to take an alcohol concentration test had the Advice of Rights form provided additional information; or that the Advice of Rights form caused him to incorrectly believe that, if he failed an alcohol concentration test, he would be eligible for a restrictive license. Cf. Hare, 326 Md. at 297-99, 604 A.2d at 914-15 (At an administrative hearing, a driver testified that he probably would have consented to take an alcohol concentration test had he known that he would be ineligible for a modification of a suspension or a restrictive license if he refused to take an alcohol concentration test.). Additionally, nothing in the Officer's Certification and Order of Suspension or the Advice of Rights form that Seenath signed indicates that Seenath expressed any confusion about the Advice of Rights form, or asked any questions about the consequences of failing or refusing to take an alcohol concentration test. In short, Seenath has failed to establish any link between his decision to consent to take an alcohol concentration test and any alleged omission or misleading information in the Advice of Rights form.

As the MVA points out, another factor to be considered in determining whether the Advice of Rights violated Seenath's right to due process is whether Seenath was prejudiced in any way by his decision to consent to take an alcohol concentration test. In this case, Seenath incurred no negative consequences as result of the decision to take—rather than

refuse to take—an alcohol concentration test. Seenath was a first-time offender; the alcohol concentration test indicated an alcohol concentration of 0.15; and, in accordance with TR § 16-205.1(f)(8)(v)(2), the ALJ suspended Seenath's commercial driver's license for 90 days. If Seenath had refused to take an alcohol concentration test, then the ALJ would have been required to not only suspend Seenath's commercial driver's license for 120 days, see TR § 16-205.1(f)(8)(v)(5), but also to disqualify Seenath from driving commercial motor vehicles for 1 year, see TR § 16-205.1(f)(4)(ii)(1). In other words, because he decided to take the alcohol concentration test, Seenath was subject to a mandatory suspension that was 30 days shorter than it would have been had he refused to take the alcohol concentration test, and Seenath avoided being disqualified from driving commercial motor vehicles for 1 year. As explained above, TR § 16-205.1(f)(8)(vii) and COMAR 11.11.12.07A do not provide for a "restrictive commercial driver's license"; thus, Seenath was ineligible for a restrictive commercial driver's license, regardless of whether he failed or refused to take the alcohol concentration test.

Seenath suffered no prejudice as a result of his decision to consent to take an alcohol concentration test. Cf. Hill, 415 Md. at 242, 999 A.2d at 1025 (A driver asserted that the Advice of Rights form prejudiced him because he would have consented to taking an alcohol concentration test in the hopes that his alcohol concentration was less than 0.08 had the Advice of Rights form stated that, if the driver refused to take an alcohol concentration test, the MVA would disqualify him from driving a commercial motor vehicle for 1 year, regardless of whether the driver participated in the Ignition Interlock System Program.). In sum, Seenath has not alleged that he was misled in any way by the

Advice of Rights form, and he was not prejudiced by his decision to take the alcohol concentration test. We discern no constitutional violation with respect to use of the Advice of Rights form as applied to Seenath.

## Facial Challenge

Having addressed the as-applied challenge, we turn to the facial issue. We must decide whether the Advice of Rights form comports with due process in general. Specifically, the question in this case is whether the Advice of Rights form is misleading as to a commercial driver's license holder's eligibility for a restrictive license where the commercial driver's license holder drives a non-commercial motor vehicle and fails an alcohol concentration test.[15] See Hill, 415 Md. at 248, 999 A.2d at 1028 ("[The driver]'s due process rights were not violated during his traffic stop because the information conveyed to him in the [Advice of Rights] form was not misleading, and did not obstruct his ability to make an informed decision about whether to refuse an alcohol concentration test.").

In reaching our decision, we must weigh the detained driver's interests—which include making informed decisions about whether to consent to take alcohol concentration

---

[15]The Supreme Court has stated that facial challenges are rarely successful. See, e.g., Shelby Cnty., Ala. v. Holder, ___ U.S. ___, 133 S. Ct. 2612, 2645 (2013) ("A facial challenge to a [statute] . . . is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the [statute] would be valid." (Citation and internal quotation marks omitted)); Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 580 (1998) ("Facial invalidation is, manifestly, strong medicine that has been employed by the Court sparingly and only as a last resort." (Citations and internal quotation marks omitted)); FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 223 (1990) ("[F]acial challenges to [statutes] are generally disfavored[.]").

tests and being able to earn a living by driving—against the State's interests, which include protecting the public, deterring drunk and/or drugged driving, and encouraging detained drivers to consent to take alcohol concentration tests. See id. at 242, 999 A.2d at 1025 ("[T]he continued possession of a driver's license may become essential to earning a livelihood . . . . Accused drunk drivers have a significant interest at stake in deciding whether to submit to a State-administered chemical sobriety test . . . . This interest is balanced against the State's compelling interest in protecting its citizens from drunk drivers, including an interest in encouraging suspects to submit to alcohol concentration tests[.]" (Brackets, citations, and internal quotation marks omitted)); Hare, 326 Md. at 303, 604 A.2d at 917 ("[W]e have to examine . . . the extent to which the questioned procedure might produce the possibility of uninformed decision-making." (Citation and internal quotation marks omitted)).

Applying these principles to the issue in this case leads to the conclusion that the Advice of Rights form is not misleading as to a commercial driver's license holder's eligibility for a restrictive commercial driver's license where the driver fails an alcohol concentration test while driving a non-commercial motor vehicle. The Advice of Rights form advises detained drivers regarding the mandatory suspensions for failing or refusing to take an alcohol concentration test as follows:

> If your test result is an alcohol concentration of at least 0.08 but less than 0.15: The suspension will be 45 days for a first offense and 90 days for a second or subsequent offense. If your test result is an alcohol concentration of 0.15 or more: The suspension will be 90 days for a first offense and 180 days for a second or subsequent offense. If you refuse to submit to a test: The suspension will be 120 days for a first offense and one (1) year for a second or subsequent offense.

(Bolding and paragraph breaks omitted). All of the above information regarding mandatory suspensions is accurate and applies to holders of commercial driver's licenses and non-commercial driver's licenses alike. See TR § 16-205.1(f)(4)(i), (f)(8)(v).

We find no merit in Seenath's contention that the Advice of Rights form indicates that the mandatory suspensions apply only to a commercial driver's license holder's ability to drive non-commercial vehicles. In no uncertain terms, the Advice of Rights form advises detained drivers that these mandatory suspensions "shall be imposed against your license[.]" In no way does the Advice of Rights form imply that these mandatory suspensions apply only to the ability to drive a non-commercial motor vehicle, or that these mandatory suspensions do not apply to commercial driver's licenses and/or the ability to drive a commercial motor vehicle. Indeed, it would be an absurd result, not consistent with protecting the public from drunk or drugged drivers, if a holder of a commercial driver's license failed or refused to take an alcohol concentration test and either received no suspension at all, or were prohibited only from driving non-commercial motor vehicles and remained able to drive commercial motor vehicles. Simply put, Seenath is incorrect in contending that the Advice of Rights form indicates that it would be possible for no suspension of a commercial driver's license to result from a failure of an alcohol concentration test.

Seenath's contention that the Advice of Rights form indicates that it would be possible for a restrictive license to result where a holder of a commercial driver's license fails an alcohol concentration test is also incorrect. Under the heading "Modification of

the Suspension or Issuance of a Restrictive License," the Advice of Rights form states, in pertinent part:

> If your test result is an alcohol concentration of 0.08 but less than 0.15: The suspension **may** be modified or a restrictive license issued at a hearing **in certain circumstances**[.] If you refuse a test, or take a test with a result of 0.15 or more: You will be ineligible for modification of the suspension or issuance of a restrictive license, unless you participate in the Ignition Interlock System Program under [TR] § 16-404.1 [].

(Paragraph break and some bolding omitted) (some bolding added). To begin, the language describing the issuance of a restrictive license in the Advice of Rights form does not reference holders of commercial driver's licenses; *i.e.*, the language in no way affirmatively indicates that a restrictive license is available to holders of commercial driver's licenses. Seenath appears to rely on the circumstance that, because the language does not distinguish between holders of commercial driver's licenses and holders of non-commercial driver's licenses, the language regarding the issuance of a restrictive license must apply to both holders of commercial and non-commercial driver's licenses. In doing so, Seenath ignores the circumstance that the advisement does not guarantee that any driver will be eligible for a restrictive license. By using the terms "may" and "in certain circumstances" as qualifiers, the Advice of Rights form makes clear that a detained driver—a holder of a commercial driver's license or a holder of a non-commercial driver's license—will not necessarily be eligible for a restrictive license if the driver takes an alcohol concentration test that indicates an alcohol concentration of at least 0.08 but less than 0.15. For example, a driver with a non-commercial driver's license is ineligible for a restrictive license without participating in the Ignition Interlock System Program if, during the past 5 years, the

- 42 -

driver's license has been suspended under TR § 16-205.1. See TR § 16-205.1(n)(1)(ii). Similarly, a holder of a commercial driver's license is ineligible for a restrictive license. See TR § 16-205.1(f)(8)(vii) ("A disqualification of . . . a commercial driver's license is not subject to any modifications, nor may a restricted . . . commercial driver's license be issued in lieu of a disqualification."); COMAR 11.11.12.07A ("The [MVA] may not issue any type of temporary, conditional, or work[-]restricted license permitting an individual to drive a commercial motor vehicle during any period in which the individual's driving privilege is . . . suspended[.]"). In short, the Advice of Rights form does not in any way indicate that a driver will with certainty be eligible for a restrictive license if the driver takes an alcohol concentration test that indicates an alcohol concentration of at least 0.08 but less than 0.15. To the contrary, the plain import of the language is that, under certain circumstances, drivers with either a commercial or non-commercial driver's license may or may not be eligible for a restrictive license.

Nor does the Advice of Rights form in any way indicate that a driver will definitely be eligible for a restrictive license if the driver takes an alcohol concentration test that indicates an alcohol concentration of at least 0.15. The Advice of Rights form states that, under that circumstance, "[y]ou will be ineligible for modification of the suspension or issuance of a restrictive license, **unless** you participate in the Ignition Interlock System Program[.]" (Emphasis added). By using the word "unless," the Advice of Rights form makes clear that, if the driver takes an alcohol concentration test that indicates an alcohol concentration of at least 0.15, then participation in the Ignition Interlock System Program is necessary for eligibility for a restrictive license. But participation in the Ignition

- 43 -

Interlock System Program alone is not sufficient for eligibility for a restrictive license. The plain language of the Advice of Rights form notifies a driver that "[a] suspension may be modified or a restrictive license issued at a hearing in certain circumstances." In other words, after taking an alcohol concentration test with a result of 0.15 or higher, participation in the Ignition Interlock System Program is a prerequisite, but not the only prerequisite, for eligibility for a restrictive license. The other prerequisites are the "certain circumstances" that are mentioned in the sentence directly preceding the advisement about the Ignition Interlock System Program in the Advice of Rights form and that are applicable where the test result is at least 0.08 but less than 0.15. And, as noted above, one such prerequisite for eligibility for a restrictive license is that the driver holds a non-commercial driver's license. See TR § 16-205.1(f)(8)(vii); COMAR 11.11.12.07A. It would be illogical, indeed, that a driver would fail an alcohol concentration test with a result of 0.15 or higher and not be subject to the same prerequisites as prescribed for drivers who attain a test result of 0.08 to less than 0.15. Thus, contrary to Seenath's position, the Advice of Rights form does not indicate that a holder of a commercial driver's license who failed an alcohol concentration test may obtain a restrictive commercial driver's license merely by participating in the Ignition Interlock System Program.

Our holding is supported by this Court's precedent, which confirms that the Advice of Rights form need not inform a detained driver of every possible enticement for taking an alcohol concentration test and by analogy of every single possible permutation of the consequences of either failing or refusing to take an alcohol concentration test. See Hare, 326 Md. at 304, 604 A.2d at 918 ("A driver need not be told of every conceivable incentive

- 44 -

for taking" an alcohol concentration test.). Indeed, it is doubtful that the Advice of Rights form even **could** do so. The Advice of Rights form's purpose is to assist law enforcement officers with making the advisements that TR § 16-205.1(b) requires—specifically, advisements about certain consequences of either failing or refusing to take an alcohol concentration test. See Hill, 415 Md. at 236-37, 999 A.2d at 1022 ("[The Advice of Rights form] was designed by the MVA to explain to persons detained under [TR §] 16-205.1 that they have the right to refuse an alcohol concentration test, as well as to explain the potential sanctions that could arise from either taking and 'failing' the [alcohol concentration] test (i.e., showing a systemic alcohol concentration of 0.08 percent or greater) or refusing to take the [alcohol concentration] test at all."). TR § 16-205.1(b) requires several advisements, so the Advice of Rights form is several paragraphs long. At a certain point, adding advisements to the Advice of Rights form would diminish the Advice of Rights form's effectiveness and increase the risk of confusion by inundating detained drivers with information that may or may not be applicable to a particular detained driver. Moreover, the availability of access to a restrictive license is an incentive to consent to take an alcohol concentration test, rather than a sanction or negative consequence. TR § 16-205.1(b) does not require that a driver be advised of the availability of incentives to consent to take an alcohol concentration test. By contrast, TR § 16-205.1(b) does require under certain circumstances that a driver be advised of his or her ineligibility for incentives. See TR § 16-205.1(b)(2)(iv) ("[I]f a police officer stops or detains any person who the police officer has reasonable grounds to believe is or has been driving or attempting to drive a motor vehicle while under the influence of alcohol, . . . and who is not unconscious or otherwise

incapable of refusing to take a test, the police officer shall: . . . Advise the person of the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program . . . that shall be imposed for refusal to take the test and for test results indicating an alcohol concentration of 0.15 or more at the time of testing[.]"); TR § 16-205.1(b)(3)(viii)(3) ("If the person refuses to take the test or takes a test which results in an alcohol concentration of 0.08 or more at the time of testing, the police officer shall: . . Within 72 hours after issuance of the order of suspension, send . . . a sworn statement to the [MVA] that states: . . . The person was fully advised of the administrative sanctions that shall be imposed, including the fact that a person who refuses to take the test or takes a test that indicates an alcohol concentration of 0.15 or more at the time of testing is ineligible for modification of a suspension or issuance of a restrictive license under [TR § 16-205.1](n)[.]"). TR § 16-205.1(b) does not require that drivers be explicitly advised that a restrictive license is not available to holders of commercial driver's licenses who fail an alcohol concentration test with a result of at least 0.15.

Our holding furthers TR § 16-205.1's purpose, which "is not to provide procedural protections to drivers who are suspected to be impaired by alcohol, drugs, or both; instead, TR § 16-205.1's purpose is to protect the public by deterring drunk and/or drugged driving." Gonce, 446 Md. at 127, 130 A.3d at 452-53 (citations omitted). To that end, TR § 16-205.1 is designed to strongly encourage a driver to consent to take an alcohol concentration test. See Hill, 415 Md. at 242, 999 A.2d at 1025 ("[T]he State's compelling interest in protecting its citizens from drunk drivers[] include[es] an interest in encouraging

- 46 -

suspects to submit to alcohol concentration tests so as to improve administrative efficiency." (Citing Hare, 326 Md. at 303, 604 A.2d at 917)); Hare, 326 Md. at 303, 604 A.2d at 917 (This Court referred to "the State's interest in protecting its citizens from drunk drivers and, as a means of doing so, encouraging suspected drunk drivers to take the [alcohol concentration] test, thus facilitating their prosecution." (Citations omitted)).

**Conclusion**

In sum, there is no merit in either an as-applied or a facial challenge to the Advice of Rights form. The Advice of Rights form does not violate due process as applied to this case, as the record contains no indication that Seenath was misled by the Advice of Rights form, and Seenath was not at all prejudiced as a result of his decision to consent to take an alcohol concentration test. The Advice of Rights form is not misleading concerning a commercial driver's license holder's eligibility for a restrictive license where the commercial driver's license holder drives a non-commercial motor vehicle and fails an alcohol concentration test; stated otherwise, the Advice of Rights form comports with due process.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO AFFIRM THE DECISION OF THE ADMINISTRATIVE LAW JUDGE. RESPONDENT TO PAY COSTS.**

Circuit Court for Montgomery County
Case No. 405656V
Argued: April 5, 2016

IN THE COURT OF APPEALS

OF MARYLAND

No. 82

September Term, 2015

_____

MOTOR VEHICLE ADMINISTRATION

v.

SUNDAR SEENATH

_____

Barbera, C.J.,
*Battaglia,
Greene,
Adkins,
McDonald,
Watts,
Hotten,

JJ.

_____

Dissenting Opinion by Hotten, J.

_____

Filed: May 23, 2016

*Battaglia, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after bring recalled pursuant to the Constitution, Article IV, Section 3A, she also participated in the decision and adoption of the majority opinion.

I respectfully dissent from the majority opinion. I believe that the Advice of Rights form failed to provide notice to the driver of a non-commercial vehicle that his or her commercial driver's license would be suspended for registering an alcohol concentration of 0.08 or higher.

As outlined in the majority opinion, the mandatory sanctions triggered by an alcohol concentration of at least 0.08 but less than 0.15, and the mandatory sanctions triggered by an alcohol concentration of 0.15 or higher, "apply to commercial driver's licenses and non-commercial driver's licenses alike." Maj. Slip Op. at 16. Accordingly, due process required that the Advice Rights form include notice of these sanctions, and that any information provided not be "misleading or inaccurate." *See* Md. Code (1977, Repl. Vol. 2012, 2015 Supp.), § 16-205.1(b)(2)(iii) and (b)(2)(iv) of the Transportation Article ("TR") (noting that "the police officer shall… [a]dvise the person of the administrative sanctions that shall be imposed for test results indicating an alcohol concentration of at least 0.08 but less than 0.15 at the time of testing[,]" along with "the administrative sanctions… for test results indicating an alcohol concentration of 0.15 or more[.]"); *see also Hill v. Motor Vehicle Admin.*, 415 Md. 231, 244, 999 A.2d 1019, 1026 (2010) ("[A]ny consideration of whether Hill's due process rights were violated will hinge solely on an analysis of whether the [Advice of Rights] form… correctly advised Hill of the proper sanctions applicable under the statute without being misleading.").

In the case at bar, the Advice of Rights form failed to provide notice of the mandatory sanctions affecting a commercial driver's license, or, at a minimum, was

misleading concerning those sanctions.  Under the heading "Suspension of Your Maryland

Driver's License or Driving Privilege", the Advice of Rights form provided:

> The following periods of suspension shall be imposed against your license or privilege to drive in Maryland:
>
> If your test result is an alcohol concentration of at least 0.08 but less than 0.15: The suspension will be 45 days for a first offense and 90 days for a second or subsequent offense.
>
> If your test result is an alcohol concentration of 0.15 or more: The suspension will be 90 days for a first offense and 180 days for a second or subsequent offense.
>
> If you refuse to submit to a test: The suspension will be 120 days for a first offense and one (1) year for a second or subsequent offense.  An additional criminal penalty of not more than $500 or imprisonment for not more than 2 months[,] or both, may be imposed under [TR] § 27-101(x) [] if you are convicted of a drunk or drugged driving offense under [TR] § 21-902, and the judge or jury finds beyond a reasonable doubt that you knowingly refused to take a test arising out of the same circumstances[.]  *If you hold a commercial driver's license [] and were driving a non-commercial motor vehicle when you were stopped, and refuse to submit to a test, your [commercial driver's license] or privilege will be disqualified for one (1) year for a first offense[,] or for life if your [commercial driver's license] or privilege has been previously disqualified for at least one (1) year under [TR] § 16-812(a) or (b) [], a federal law, or any other [S]tate's law[.] If you were driving a commercial motor vehicle and refuse the test, your [commercial driver's license] or privilege will be disqualified as set forth below[.]*

(emphasis omitted) (emphasis added).  The phrase, "[t]he following periods of *suspension*

shall be imposed against your *license* …[,]" could be perceived as encompassing only non-

commercial driving privileges.  (emphasis added).  This is because the Advice of Rights

form, when describing the sanction for refusal to take an alcohol concentration test, lists

the suspension that shall be imposed on a driver's license, and also references a one-year

"disqualification" of a "commercial driver's license" or "CDL."  The inclusion of the terms

"CDL" and "disqualification", as distinguished from "license" and "suspension" elsewhere in the form, gives the impression that a "suspension" of the driver's "license" is not as all-encompassing as the majority would suggest. Thus, the description of the sanctions for taking and failing an alcohol concentration test, which only pertain to the driver's "license", did not provide notice of the mandatory sanctions affecting the driver's commercial license.

This Court's opinion in *Hill*, where we held that the Advice of Rights form did not mislead a driver that the disqualification of his CDL could be modified through participation in the ignition interlock program, is instructive. 415 Md. at 248, 999 A.2d at 1028. In that case, we noted, *inter alia*, that the section of the form under the heading "Modification of the Suspension or Issuance of a Restrictive License" did not "mention a CDL or commercial driving privileges[,]" so the Advice of Rights form did not mislead Mr. Hill or "incompletely advise [him] of the applicable sanctions[.]" *Id.* at 246, 999 A.2d at 1027-28. Our reasoning in *Hill*—indicating that commercial driving privileges are only at issue where the form makes specific mention of a commercial driver's license—should apply to all sections of the Advice of Rights form. Therefore, if the section of the form concerning modifications did not pertain to commercial driving privileges because the term "CDL" was missing in *Hill*, then the section of the form discussing suspensions, which also omits the term "CDL," should be interpreted similarly in the case at bar.

I agree with the majority that it would be inconsistent with the protection of the public, "if a holder of a commercial driver's license failed … an alcohol concentration test and … remained able to drive commercial vehicles." Maj. Slip Op. at 41. However, we are not tasked with interpreting the Advice of Rights form in a way that will best serve the

- 3 -

public good, and we should not expect a driver detained on suspicion of drunk or drugged driving to contemplate the meaning of the form in such a public-spirited manner. The plain language of the Advice of Rights form leads a driver to believe that his or her commercial driving privileges would be unaffected by the failure of an alcohol concentration test. I would therefore affirm the decision of the circuit court.