999 A.2d 1019

**James E. HILL**

v.

**MOTOR VEHICLE ADMINISTRATION.**

**No. 82, Sept. Term, 2009.**

Court of Appeals of Maryland.

July 26, 2010.

---

232

Leonard R. Stamm (Johanna Cohen Leshner, Goldstein & Stamm, P.A. of Greenbelt, MD), on brief, for petitioner.

Dore J. Lebowitz, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

ADKINS, J.

Petitioner James E. Hill, the holder of a commercial driver's license ("CDL"), was detained by an officer of the Charles County Sheriff's Department on suspicion of drunk driving. During the traffic stop, Hill was advised of his right to refuse to take an alcohol concentration test (commonly called a "breathalyzer" test), and of the sanctions that would be imposed against him if he either failed or refused to take the test. These advisements came via the recitation of a standard form prepared by Respondent, the Maryland Motor Vehicle Administration ("MVA"). Hill refused the test, and was subjected to an administrative hearing, before an Administrative Law Judge ("ALJ") of the Maryland Office of Administrative Hearings, in order to determine the sanctions that would be imposed against him.

During the hearing, Hill argued that he had been improperly advised of his rights as required by both due process and the relevant provisions of the Transportation Article. The ALJ found that Hill had been properly advised of his rights, and imposed on Hill a 120-day suspension of all driving privileges, modified to allow him to participate in an Ignition Interlock System Program ("Interlock Program"). His CDL was also disqualified for one year. Hill sought judicial review of the ALJ's decision in the Circuit Court for Charles County, which affirmed the ruling below. We granted certiorari to consider the following question: [1]

---

1. This Court has appellate jurisdiction over this case, through our writ of certiorari, because the Circuit Court's judgment below was on appeal from a final administrative decision arising under Title 16 of the Transportation Article. *See* Md.Code (1973, 2006 Repl.Vol.) § 12–305 of the Courts & Judicial Proceedings Article ("C.J.") (granting jurisdiction in such cases). The Court of Special Appeals does not have jurisdiction to review the Circuit Court's decision. *See* C.J. § 12–306 to –08.

Whether the Petitioner was not "fully advised" of the administrative sanctions for refusing a breath test and was misled, where Petitioner was advised that he would be eligible for "a modification of the suspension of issuance of a restrictive license" if petitioner participated in the ignition interlock program but was not informed that a one-year CDL disqualification could not be modified?

We shall hold that Hill was properly advised of his rights, as required by both due process and the statute at issue, and we shall affirm the judgment of the Circuit Court for Charles County.

## FACTS AND PROCEDURAL HISTORY

On the evening of May 30, 2008, Petitioner James E. Hill was stopped by Charles County Sheriff's Deputy Robert Herbert while Hill was driving his pickup truck through the town of Pomfret. Hill, the owner of an excavating and land development company, was coming from a job site. Hill was the holder of a Class A CDL, which allowed him to operate both commercial and passenger vehicles (though the truck driven by Hill at the time of the stop was not a commercial vehicle). Herbert noted that Hill had been weaving in and out of his traffic lane while driving, at one point crossing the center line. According to Herbert, Hill had the odor of alcohol on his breath, slurred his speech, and appeared "unsteady on his feet." Hill would later testify that he had consumed several servings of beer approximately two hours prior to Herbert's stop.

After administering field sobriety tests, Herbert took Hill into custody on suspicion of driving while intoxicated. Herbert advised Hill of his rights under Section 16–205.1 of the Transportation Article by reading the entirety of MVA form DR–15 to Hill at the scene. Form DR–15 was designed by the MVA to explain to persons detained under Section 16–205.1 that they have the right to refuse an alcohol concentration test, as well as to explain the potential sanctions that could arise from either taking and "failing" the test (i.e.,

showing a systemic alcohol concentration of 0.08 percent or greater) or refusing to take the test at all. In pertinent part, the form read as follows:

You have been stopped or detained and reasonable grounds exist to believe that you have been driving or attempting to drive a motor vehicle under circumstances requiring that you be asked to submit to a test under § 16–205.1 of the Maryland Vehicle Law. In this situation, the law deems that you have consented to take a test to measure the alcohol concentration ... in your system. You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person.

*Suspension of Your Maryland Driver's License or Driving Privilege:*

**If you refuse to submit to the test,** or submit to the test and the result indicates an alcohol concentration of 0.08 [percent] at the time of testing, **your Maryland driver's license will be confiscated, you will be issued an Order of Suspension and, if eligible, a temporary license valid for 45 days.** The following periods of suspension shall be imposed against your license or privilege to drive in Maryland:

If your test result is ... at least 0.08 but less than 0.15: The suspension will be 45 days for a first offense and 90 days for a second or subsequent offense.

If your test result is ... 0.15 or more: The suspension will be 90 days for a first offense and 180 days for a second or subsequent offense.

**If you refuse to submit to a test:** The suspension will be 120 days for a first offense and one year for a second or subsequent offense. . . . **If you hold a commercial driver's license (CDL) at the time you refuse to submit to a test, your CDL or privilege will be disqualified for 1 year.**

*Modification of the Suspension or Issuance of a Restrictive License:*

If your test result is an alcohol concentration of [at least] 0.08 but less than 0.15: The suspension may be modified or a restrictive license issued at a hearing in certain circumstances.

**If you refuse a test, or take a test with a result of 0.15 or more: You will be ineligible for modification of the suspension or issuance of a restrictive license, unless you participate in the [Interlock] Program under § 16–404.1 of the Maryland Vehicle Law.** This program requires the vehicle(s) you drive to be equipped with a device that prevents you from operating it if you have alcohol in your blood. **At a hearing, if you request one, an administrative judge may modify a suspension by permitting you to participate in the [Interlock] Program for one year, but is not required to do so. Instead of requesting a hearing, you may elect to participate in the [Interlock] Program for one year, instead of the period of suspension, if the following conditions are met:** 1) your driver's license is not currently suspended, revoked, canceled, or refused; 2) you were not charged with a moving violation arising out of the same circumstances as the Order of Suspension that involved the death of, or serious physical injury to, another person; and 3) within thirty (30) days of the date of the Order of Suspension you [elect in writing to participate in the Interlock Program and surrender a valid license]. . . .

(Emphasis altered and added.) Hill refused to submit to the alcohol concentration test. After hearing the refusal, Herbert transported Hill to the Charles County Jail, where Hill again refused to take the test.

Ultimately, Hill requested an administrative hearing, which was held before an ALJ on August 29, 2008, and October 29, 2008. At the hearing, Hill argued that he was misled by the DR–15 form, because the form did not properly advise him that his CDL would be disqualified for one year regardless of whether he participated in the Interlock Program. The ALJ found that Herbert had reasonable grounds to stop Hill and to ask Hill to submit to an alcohol test. The ALJ further found

that Herbert had read the DR–15 form to Hill, and that Hill refused to submit to the test after being properly advised of his rights. The ALJ modified Hill's automatic 120-day suspension with respect to his non-commercial driver's rights to allow Hill to participate in the Interlock Program, and also imposed the mandatory one year CDL disqualification.

Hill sought judicial review of the ALJ's decision in the Circuit Court for Charles County, which affirmed the ALJ's decision. In reviewing the administrative decision, the Circuit Court found that the ALJ's factual rulings were supported by substantial evidence, and that the ALJ's conclusions of law were "legally sound." We granted certiorari to consider Hill's claims. *See Hill v. Motor Vehicle Admin.*, 410 Md. 165, 978 A.2d 245 (2009) (granting certiorari).

## DISCUSSION

Judicial review of an administrative agency's decision "is narrow; it is limited to determining if there is substantial evidence in the record as a whole to support the agency's findings and conclusions, and to determin[ing] if the administrative decision is premised upon an erroneous conclusion of law." *Md. Aviation Admin. v. Noland*, 386 Md. 556, 571, 873 A.2d 1145, 1154 (2005) (quotation marks and citations omitted). "We review an administrative agency's decision under the same statutory standards as the Circuit Court." *Gigeous v. E. Corr. Inst.*, 363 Md. 481, 495, 769 A.2d 912, 921 (2001).

Hill's challenges relate entirely to issues of law—namely, whether the DR–15 form as written fails to comport with the requirements of due process or the requirements of the Transportation Article. He does not challenge either the ALJ's findings of fact or the Circuit Court's review of those facts. Because there are "no disputes of fact in the case at bar, our review is limited to determining . . . if the administrative decision is premised upon an erroneous conclusion of law." *Motor Vehicle Admin. v. Jaigobin*, 413 Md. 191, 196, 991 A.2d 1251, 1254 (2010) (quotation marks and citation omitted).

## The Statutory Framework

Before we consider the substance of Hill's claims, it is worthwhile to set forth clearly the sanctions under the Transportation Article applicable to a driver who either refuses to take or fails an alcohol concentration test. *See* Md.Code (1977, 2009 Repl.Vol.) § 16–205.1 of the Transportation Article ("T.A."). For a duly licensed, first-time offender such as Hill, the sanctions are as follows:

- A driver who fails the test, and shows an alcohol concentration between 0.08 and 0.15 percent, will have driving privileges suspended for 45 days following an administrative hearing. *See* T.A. § 16–205.1(f)(8)(v)(1)(A). This suspension may be modified in several ways at the hearing given a showing that certain hardships would result from the complete suspension of driving privileges. T.A. § 16–205.1(n)(1). A restrictive license may also be issued by the hearing administrator that prohibits driving unless the driver is a participant in the Interlock Program. T.A. § 16–205.1(n)(2).

- A driver who fails the test, and shows an alcohol concentration of 0.15 percent or higher, will have driving privileges suspended for 90 days following an administrative hearing. *See* T.A. § 16–205.1(f)(8)(v)(2)(A). This suspension cannot be modified for hardship reasons, but the hearing administrator may issue a restrictive license that prohibits driving unless the driver is a participant in the Interlock Program for one year. T.A. § 16–205.1(n)(4)(ii). Under certain conditions, such a modification will be automatic for a driver who agrees, in lieu of a hearing, to enroll in the Interlock Program for one year. T.A. § 16–205.1(b)(3)(vii).

- A driver who refuses to take the test will have driving privileges suspended for 120 days. *See* T.A. § 16–205.1(f)(8)(v)(3)(A). This suspension cannot be modified for hardship reasons, but the hearing administrator may issue a restrictive license that prohibits driving unless the driver is a participant in the Interlock Program for one

year. T.A. § 16–205.1(n)(4)(ii). Under certain conditions, such a modification will be automatic for a driver who agrees, in lieu of a hearing, to enroll in the Interlock Program for one year. T.A. § 16–205.1(b)(3)(vii).

- A driver who refuses to take the test or fails the test (regardless of the alcohol concentration shown in the driver's system) also incurs a one-year disqualification of a CDL. *See* T.A. § 16–205.1(f)(8)(ii)(1). This sanction applies whether or not the traffic stop occurred while the driver was in a commercial vehicle. *Id.* This disqualification is "not subject to any modifications, nor may a restricted [CDL] be issued in lieu of a disqualification." T.A. § 16–205.1(f)(8)(vii).

There were thus three potentialities that could have applied in Hill's situation. First, had he "passed" the test (showing an alcohol concentration of less than 0.08 percent), none of these sanctions would have applied. Second, had he failed the test, by any measure, he would have been subject to a suspension, with the possibility of receiving a restricted license through enrollment in the Interlock Program; the length of suspension and the possibility of further modifications would depend on the precise concentration of alcohol in his system. Third, had he refused to take the test, he would have been subject to a still longer suspension than would have been imposed in the event of any failure, but he still would have left open the possibility of receiving a restricted license through enrollment in the Interlock Program.

Under any scenario where Hill failed or refused to take the test, however, he would have also been subject to a one-year disqualification of his CDL. This disqualification is in addition to any suspension of non-commercial driving privileges. The Transportation Article states that this disqualification is mandatory and cannot be modified. *See* T.A. §§ 16–205.1(f)(8)(ii)(1), (f)(8)(vii). This is the penalty that Hill actually received upon refusing to take the alcohol concentration test, in addition to a 120–day suspension modified to allow participation in the Interlock Program.

At oral argument, Hill's counsel was asked how Hill had actually been harmed by the DR–15 form (assuming it was deficient) in light of the fact that the disqualification was mandatory. Hill's counsel responded that Hill could have avoided the disqualification by passing the alcohol concentration test, thus avoiding the aforementioned sanctions altogether. We therefore operate from the presumption that Hill is arguing, though he does not explicitly say so in his brief, that had he been advised of the mandatory nature of the CDL disqualification, he would have agreed to the alcohol concentration test in the hopes that his result would have been less than 0.08 percent.

### Hill's Challenges to the DR–15 Form

Hill contends that the DR–15 form was sufficiently misleading to impinge upon both his due process rights and his statutory rights under the Transportation Article. It is true that both due process and statutory law may be implicated through the process of sanctioning an individual for driving while intoxicated. We will hold, however, that neither Hill's due process rights nor his statutory rights were violated.

With respect to due process, we have held that the "continued possession of a driver's license may become essential to earning a livelihood; it is, therefore, an entitlement that may not be taken away without the due process mandated by the Fourteenth Amendment." *Brosan v. Cochran,* 307 Md. 662, 672, 516 A.2d 970, 975 (1986). Accused drunk drivers have a "significant interest at stake in deciding whether to submit to [a] State-administered chemical sobriety test" such as the one in this case. *Id.* This interest is balanced against the State's compelling interest in protecting its citizens from drunk drivers, including an interest in encouraging suspects to submit to alcohol concentration tests so as to improve administrative efficiency. *See Hare v. Motor Vehicle Admin.,* 326 Md. 296, 303, 604 A.2d 914, 917 (1992), *superseded by statute on other grounds,* Chapter 407 of the Acts of 1993.

██ A detaining officer's compliance with the protections of due process requires that an officer advise a driver of the applicable sanctions under the governing statute. *See Hare,* 326 Md. at 306, 604 A.2d at 918–19; *see also* T.A. § 16–205.1(b) (outlining required disclosures by an officer detaining a driver suspected of unlawful intoxication). This does not require disclosure of "every conceivable incentive for taking a chemical test for alcohol[,]" and a detaining officer need not disclose "even one additional incentive" not mandated by the Transportation Article.[2] *Hare,* 326 Md. at 304, 604 A.2d at 918; *see also South Dakota v. Neville,* 459 U.S. 553, 566, 103 S.Ct. 916, 924, 74 L.Ed.2d 748 (1983) (holding that a failure to warn of potential sanctions does not violate due process if it does not "unfairly 'trick'" a detained driver). We have held that if an officer chooses to provide information beyond the requirements of the statute, that act itself may be a denial of due process if the additional information proves to be misleading or inaccurate. *Hare,* 326 Md. at 306, 604 A.2d at 919. Ultimately, we require only that the State "not mislead the defendant or construct [metaphorical or semantic] road blocks,

---

**2.** Our sister states that have considered this issue with respect to their own implied consent laws have also held that due process does not require a detaining officer to advise a motorist of every possible consequence of failing or refusing to take an alcohol concentration test. *See, e.g., Brewer v. Motor Vehicle Div., Dep't of Revenue,* 720 P.2d 564, 569 (Colo.1986) (due process requirements for advisement satisfied by publication of relevant statutes); *Chancellor v. Dozier,* 283 Ga. 259, 658 S.E.2d 592, 594 (2008) (due process does not require advisement of all possible consequences of refusing test); *Commonwealth v. Crowell,* 403 Mass. 381, 529 N.E.2d 1339, 1342 (1988) (officer need not advise that suspension will result from failing test); *Jones v. Dir. of Revenue,* 237 S.W.3d 624, 626 (Mo.Ct.App.2007) (officer did not have to advise driver that CDL suspension would result from refusal to take test because driver was presumed to know the law); *State v. Jenkins,* 128 N.H. 672, 517 A.2d 1182, 1184 (1986) (officer has no duty to provide advisements beyond statutory minimum); *State v. Bostrom,* 127 Wash.2d 580, 902 P.2d 157, 162 (1995) (advisement comports with due process if it does not unfairly deceive the a detained motorist); *cf. City of Bryan v. Hudson,* 77 Ohio St.3d 376, 674 N.E.2d 678, 681 (1997) (holding that informing a detained driver of statutory sanctions is essential to due process, but that this does not require detaining officer to immediately assess, and inform a detained driver of, the applicable length of suspension).

thus unduly burdening" the driver's decision making process when considering whether to submit to the State's test. *Id.* at 304, 604 A.2d at 918. Thus, any consideration of whether Hill's due process rights were violated will hinge solely on an analysis of whether the DR–15 form, as read by Herbert, correctly advised Hill of the proper sanctions applicable under the statute without being misleading.

■ Addressing the question of Hill's statutory rights requires a similar approach. Under the Transportation Article, an administrative hearing of the type at issue in this case must consider whether a driver stopped by an officer "was fully advised ... of the administrative sanctions that shall be imposed" for refusing to take or failing an alcohol concentration test. *See* T.A. § 16–205.1(f)(7)(i)(3). "Full advisement" requires only that those sanctions that are mandatory under the statute must be disclosed, and not those sanctions whose imposition is a mere potentiality, such as those subject to the discretion of a hearing officer. *See Motor Vehicle Admin. v. Chamberlain*, 326 Md. 306, 318, 604 A.2d 919, 924–25 (1992), *superseded by statute on other grounds,* Chapter 407 of the Acts of 1993. A hearing officer may neither issue a suspension nor disqualify a CDL if the driver was not fully advised of the applicable administrative sanctions. *See* T.A. §§ 16–205.1(f)(8)(i)(3), (f)(8)(ii)(4) (requiring full advisement as a prerequisite for the imposition of a suspension or a disqualification). Thus, if Hill was not fully advised of the applicable sanctions he faced, then the penalties against him must be struck down.

Hill does not argue that Herbert improperly relayed the contents of the DR–15 form during the traffic stop—his challenge is limited to the contents and structure of the form itself. Our resolution of these issues is therefore reduced to an analysis of the clarity and correctness of the DR–15 form. If the contents of the form provided misleading advice to Hill, so as to unduly obstruct his decision-making process in evaluating whether to submit to the test, then the use of the form violated Hill's due process rights. Alternately, if the contents of the form did not fully advise Hill of the sanctions he faced

under the Transportation Article, then the ALJ did not have the proper statutory authority to impose penalties against Hill.

Hill argues that the form "falsely leads CDL holders to believe that they may still maintain their CDL[s] after refusing to take the chemical test" if they enter the Interlock Program. It is clear to this Court, however, that the DR–15 form properly advised Hill of the penalties he faced, and did not obstruct Hill's decision-making process. The text of the DR–15 form is plain.[3] The following language is included under the heading "Suspension of Your Maryland Driver's License or Driving Privilege:"

> **If you refuse to submit to a test:** The suspension will be 120 days for a first offense and one year for a second or subsequent offense. An additional criminal penalty of not more than $500 or imprisonment for not more than 2 months, or both, may be imposed under § 27–101(x) of the Maryland Vehicle Law if you are convicted of a drunk or drugged driving offense under § 21–902, and the judge or jury finds beyond a reasonable doubt that you knowingly refused to take a test arising out of the same circumstances. **If you hold a commercial driver's license (CDL) at the time you refuse to submit to a test, your CDL or privilege will be disqualified for 1 year.**

(Emphasis added.) This language straightforwardly informs a suspected drunk driver that CDL driving privileges will be suspended for a full year in the event that the driver refuses to submit to an alcohol concentration test. This provision is one of only two references to a CDL on the whole of the DR–15 form; the second addresses offenses occurring while actually driving a commercial vehicle.[4] The language reproduced

---

3. While there is no indication that Hill actually read the DR–15 form during the traffic stop, the ALJ found that there was sufficient evidence to indicate that Herbert read the form, in its entirety, to Hill. Hill does not challenge this finding.

4. This latter provision, entitled "Offenses Occurring While Driving a Commercial Motor Vehicle[,]" states:

above is unequivocal—it does not offer any suggestion of mitigation or an alternative, nor should it, as no such mitigation or alternative is possible under the statute.

The heading immediately below this language, entitled "Modification of the Suspension or Issuance of a Restrictive License[,]" is the first place at which the DR–15 form mentions the possibility of modifying suspensions through the issuance of a restricted license or participation in the Interlock Program. There are two significant points of interest here. First, as the MVA discusses in its brief, this section explicitly refers to suspensions, and not disqualifications. At no point under this heading does the language of form DR–15 discuss disqualified licenses, or use a disjunctive phrase such as "suspension or disqualification" in referring to the Interlock Program. Second, and more significantly, at no point does the language under this heading mention a CDL or commercial driving privileges. Again, there are but two mentions of a CDL on the DR–15 form, and neither is incorporated into a section addressing mitigation of, or alternatives to, CDL disqualification. On the whole, these passages are clear and unambiguous, and neither create roadblocks to inhibit a driver's decision-making process nor incompletely advise a driver of the applicable sanctions under the statute.

■ In addition to challenging the structure of the DR–15 form, Hill also relies on the statutory history of Section 16–205.1. He refers to two amendments to the Transportation Article. The first, passed in 2005, established the mandatory one-year disqualification for CDL holders who refuse an alco-

---

In addition to any suspension for a test failure or refusal, if you were operating a commercial motor vehicle and your test result indicates an alcohol concentration of 0.04 or more, or you refused to submit to a test, your commercial driver's license or privilege shall be disqualified 1 year for a first offense, or 3 years for a first offense committed while transporting hazardous materials required to be placarded. Your commercial driver's license or privilege shall be disqualified for life if you commit a second or subsequent offense.

Neither Hill nor the MVA argues that this section is relevant to Hill's claim; we include the provision here solely for the sake of completeness.

hol concentration test. *See* 2005 MD. LAWS 1042 (codified at T.A. § 16–205.1(f)(8)(vi)). The second amendment, passed in 2006, mandated that an officer detaining a driver on suspicion of drunk driving must advise the driver of the possibility of participating in the Interlock Program. *See* 2006 MD. LAWS 2365 (codified at T.A. § 16–205.1(b)). Hill argues that this latter amendment is at odds with the former, and indicates legislative intent to require fuller disclosure of potential sanctions under the statute.[5]

We disagree with Hill's assessment. In interpreting a statute, our objective is always to give effect to the intent of the General Assembly. *See, e.g., Gilmer v. State,* 389 Md. 656, 662, 887 A.2d 549, 553 (2005). But as we have held, "[t]he best source of legislative intent is the statute's plain language, and when the language is clear and unambiguous, our inquiry ordinarily ends there." *Smith v. State,* 399 Md. 565, 578, 924 A.2d 1175, 1182 (2007). In this case, the language of the Transportation Article is clear, with respect to both the unmitigable disqualification for CDL holders and the mandatory advisement of rights for drivers detained on suspicion of drunk driving. There is no ambiguous language in either provision, and the provisions do not explicitly or implicitly contradict each other.

The General Assembly, without question, was well within its rights to elect to strongly penalize CDL holders who drive while intoxicated with respect to their commercial driving privileges, but still allow those drivers the limited ability to drive non-commercial vehicles after being disciplined. Any number of motivating factors may have played into this decision. For example, the General Assembly may have believed that commercial vehicles were a greater safety hazard than non-commercial vehicles in the hands of habitually intoxicated

---

**5.** Hill also claims that because the DR–15 form was developed in order to facilitate proper disclosures per the statutory requirements, the form should more clearly state that CDL privileges are not subject to modification in order to harmonize with the General Assembly's legislative intent.

drivers. But we need not speculate on the General Assembly's specific motives in creating this dichotomy—as we have long held, such an inquiry is inappropriate where the statutory provisions under review are themselves sound. *See Wachter v. McEvoy*, 125 Md. 399, 408, 93 A. 987, 990 (1915) (holding that "the reasons or motives which actuated the Legislature in imposing [a statutory prohibition] become immaterial in view of the plain provisions of the [enabling] Act."). We therefore reject Hill's argument that the DR–15 form is incompatible with the General Assembly's legislative intent as embodied in the statutory provisions.

## CONCLUSION

We hold that Hill's due process rights were not violated during his traffic stop because the information conveyed to him in the DR–15 form was not misleading, and did not obstruct his ability to make an informed decision about whether to refuse an alcohol concentration test. The DR–15 form also fully advised Hill of the applicable sanctions under the Transportation Article, and thus satisfied the statutory requirements for imposing a suspension on Hill.

**JUDGMENT OF THE CIRCUIT COURT FOR CHARLES COUNTY AFFIRMED. COSTS TO BE PAID BY THE PETITIONER.**