*Bradford Owusu v. Motor Vehicle Administration,* No. 10, September Term 2018, Opinion by Hotten, J.

**CONSTITUTIONAL LAW – DUE PROCESS –** The Court of Appeals held that the DR-15, which officers read to motorists during a stop on suspicion of drunk driving, clearly advises a motorist that a commercial driver's license (CDL) will be disqualified if the motorist refuses a blood alcohol concentration test, and thus, motorists receive sufficient notice of potential sanctions as required by due process. The DR-15's language unambiguously informs motorists that CDL driving privileges will be suspended for a full year in the event that they refuse to submit to an alcohol concentration test. Subsequent oral advisements that are neither false nor misleading do not pose an as-applied due process violation because there is no prejudice to motorists.

**FULL ADVISEMENT – SUFFICIENCY OF STATUTORY ADVISEMENT –** The Court of Appeals held that full advisement occurs when officers inform motorists of administrative sanctions under Transportation Article § 16-205.1 that shall be imposed for failing or refusing to submit to an alcohol concentration test. Full advisement is accomplished through a complete reading of the DR-15 and subsequent oral advisements that do not impede motorists' decision-making are sufficient for full advisement under Transportation Article § 16-205.1.

**CONSTITUTIONAL LAW – DUE PROCESS** – The Court of Appeals held that the DR-15 unambiguously reflects the length of time motorists must participate in the Ignition Interlock Program in the event of test refusal. Motorists are not prejudiced in their decision-making by the DR-15's representation of participation in the Ignition Interlock Program.

**FULL ADVISEMENT – SUFFICIENCY OF STATUTORY ADVISEMENT –** The Court of Appeals held that, in the event of a test refusal, the DR-15 provides motorists full advisement concerning the duration of mandated participation in the Ignition Interlock Program.

IN THE COURT OF APPEALS

OF MARYLAND

No. 10

September Term, 2018

_____

BRADFORD OWUSU

v.

MOTOR VEHICLE ADMINISTRATION

_____

Barbera, C.J.,
Greene,
*Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

_____

Opinion by Hotten, J.
Watts, J., joins in judgment only.

_____

Filed: November 20, 2018

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document " authentic.



Suzanne C. Johnson, Acting Clerk

Petitioner, Bradford Owusu, ("Petitioner") seeks review of a decision of the Circuit Court for Montgomery County, which affirmed the administrative law judge who held that Petitioner was fully advised of the sanctions imposed upon him after refusing a chemical test. Petitioner presents a constitutional due process claim and a statutory "fail to advise" argument, as reflected in the following questions for review:

1. Is it a violation of due process and a failure to "fully advise" a driver of the administrative penalties that shall be imposed for refusing a breath test pursuant to [Md. Code, Transportation Article] §16-205.1 when, after reading the [Motor Vehicle Administration's ("MVA")] DR-15 advice form, a police officer's oral restatement of the penalties for failing and refusing a breath test omits the most severe mandatory penalty for refusal?

2. Is the DR-15 form's failure to advise suspected drunk drivers of the length of time the ignition interlock would be required in the event of a refusal – one year – a violation of due process and a failure to "fully advise" a driver of the administrative penalties that shall be imposed for refusing a breath test pursuant to [Md. Code, Transportation Article] §16-205.1?

For reasons discussed *infra*, we answer both questions in the negative and shall affirm the judgment of the circuit court.

*Background*

The Maryland Implied Consent Statute, Md. Code, Transportation Article ("Transp.") § 16-205.1,[1] provides that a motorist, who operates a motor vehicle on the

---

[1] Transp. § 16-205.1 provides a statutory structure for suspending the license of a driver who refuses to submit to testing. The statute operates to reduce the incidence of drunk driving and to protect public safety by encouraging drivers to take alcohol concentration tests.

Transp. § 16-205.1(b) outlines the applicable sanctions for drivers producing a chemical test result greater than 0.08 or who refuse testing. The statute provides that a test

(continued . . .)

roadway of the state, has given consent to take a chemical test ("test") to determine drug or alcohol concentration, if detained on reasonable suspicion of intoxicated driving. Transp. § 16-205.1(a)(2). Upon the detention of drivers suspected of driving while intoxicated, officers must advise motorists of the test and provide information regarding consequences of a test refusal and a positive test result.[2] The MVA has developed a standard form ("the DR-15" or "Advice of Rights" form) that officers use to advise detained motorists of the sanctions that will be imposed as a result of test refusal or a positive test result. The DR-15 includes all of the legislatively mandated advice that must be provided to motorists who are subject to chemical testing.[3]

*Legislative History*

The scope of an officer's required advice to motorists who are stopped on suspicion of intoxicated driving has expanded, as reflected by the legislative history of Transp. § 16-

---

(. . . continued)

result greater than 0.08 can result in suspension of the person's driving privilege for 180 days for the first offense, or suspension of the person's license for 270 days for refusing a test for the first offense. Transp. § 16-205.1(b)(1)(iii) further provides that individuals operating a commercial motor vehicle or who hold a commercial instructional permit or a commercial driver's license and refuse to take a test will have their commercial instructional permit or commercial driver's license suspended for one year for a first offense.

[2] A positive test result arises when a motorist has a blood alcohol concentration of 0.08 or more as measured by grams of alcohol per 100 milliliters of blood or grams of alcohol per 210 liters of breath. Transp. § 11-174.1(a).

[3] The DR-15 outlines important information for the suspected drunk driver including the possible sanctions associated with varying levels of blood alcohol concentration, the sanctions for refusing to take the test, and the right to have an administrative hearing, among other things.

205.1. In 1993, the General Assembly added § 16-205.1(b)(2)(iii), which required that officers advise of "ineligibility for modification of a suspension or issuance of a restrictive license[ ]" when motorists refused to take a test. 1993 Laws of Md., ch. 407 (S.B. 18).

Changes in 1998 expanded the MVA's Ignition Interlock Program ("Interlock Program"), which permits individuals who were stopped under suspicion of driving while intoxicated to continue driving when their vehicle is equipped with an ignition interlock device. The MVA provides these individuals with a restricted license, which may be granted despite test refusal. 1998 Laws of Md., ch. 526 (H.B. 928).

In 2006, the General Assembly added Transp. § 16-205.1(b)(2)(iv), which requires officers to advise motorists of "the administrative sanctions, including ineligibility for modification of a suspension or issuance of a restrictive license unless the person participates in the Ignition Interlock System Program." 2006 Laws of Md., ch. 461 (H.B. 525). Each of these respective changes to Transp. § 16-205.1 is reflected in the DR-15.

*The Commercial Driver's License Program*

The Maryland Commercial Driver's License Act is codified in Transportation Article §§ 16-801 – 16-820 ("Act"). A commercial motor vehicle is a vehicle that transports passengers, property, or hazardous materials and meets the size and weight parameters specified in Transp. § 16-803(c)(1). The Act requires that the driver of a commercial motor vehicle possess a single driver's license and demonstrate the knowledge and skills necessary to drive a commercial vehicle. Transp. §§ 16-804, 16-807(b)(1). Under the Act, the MVA can disqualify the commercial driver's license ("CDL") of drivers who refuse to submit to an alcohol concentration test while driving a commercial vehicle.

3

Transp. § 16-812(a)(3). In accordance with Transp. § 16-205.1(f)(8)(vii), disqualification of a CDL is not subject to any modifications, nor may a restricted CDL be granted. Despite a CDL disqualification, the motorist may retain privileges to drive a *non-commercial* vehicle through participation in the Interlock Program. Transp. § 16-812(p).

In 2005, then Governor Robert L. Ehrlich, Jr. signed Senate Bill 640, which established new and stricter sanctions for those holding CDLs. The bill connected commercial driver's license holders' offenses in a non-commercial vehicle to their CDLs, and the change was reflected in Transp. § 16-205.1(b)(1)(iii). The statute reads, in relevant part:

> In addition to any applicable driver's license suspensions authorized under this section, in the case of a person operating a commercial motor vehicle *or who holds a commercial instructional permit or a commercial driver's license who refuses to take a test*:
>
> 1. Disqualify the person's commercial instructional permit or commercial driver's license for a period of 1 year for a first offense, 3 years for a first offense which occurs while transporting hazardous materials required to be placarded, and disqualify for life if the person's commercial instructional permit or commercial driver's license has been previously disqualified for at least 1 year. . . .

(Italics added for emphasis). The DR-15 also reflected these changes:

> ***If you hold a commercial driver's license (CDL)*** *and were driving a non-commercial motor vehicle when you were stopped*, and you refuse to submit to a test, your CDL or privilege shall be disqualified for 1 year for a 1st offense or for life if your CDL or privilege has been previously disqualified for at least 1 year under Maryland Transportation Article §16-812 (a) or (b), a federal law, or any other state's law.

(Bold in original) (italics added for emphasis). These changes regarding CDL holders were reviewed in *Hill v. Motor Vehicle Admin.*, 415 Md. 231, 999 A.2d 1019 (2010), where we outlined the options available to Mr. Hill, holder of a CDL, after an officer stopped him in his non-commercial vehicle on suspicion of intoxicated driving. *Id.* at 236, 999 A. 2d at 1022.

> First, had he "passed" the test (showing an alcohol concentration of less than 0.08 percent), none of these sanctions would have applied. Second, had he failed the test, by any measure, he would have been subject to a suspension, with the possibility of receiving a restricted license through enrollment in the Interlock Program; the length of suspension and the possibility of further modifications would depend on the precise concentration of alcohol in his system. Third, had he refused to take the test, he would have been subject to a still longer suspension than would have been imposed in the event of any failure, but he still would have left open the possibility of receiving a restricted license through enrollment in the Interlock Program.
>
> *Under any scenario where Hill failed or refused to take the test, however, he would have also been subject to a one-year disqualification of his CDL. This disqualification is in addition to any suspension of non-commercial driving privileges.*

415 Md. at 241, 999 A.2d at 1024-25 (citing Transp. §§ 16-205.1 (f)(8)(ii)(1), (f)(8)(vii)) (italics added for emphasis).

*Petitioner's Traffic Stop*

On April 15, 2017, officers of the Montgomery County Police Department stopped Petitioner after he was observed driving erratically. Upon approaching the vehicle, officers detected a strong odor of alcohol on Petitioner's breath and observed bloodshot watery eyes as well as slurred speech. Suspecting that Petitioner was driving under the influence of alcohol, an officer instructed Petitioner to perform several field sobriety tests. Petitioner

5

was unable to complete the tests in a satisfactory manner.  He was detained for driving under the influence of alcohol.  Officers transported Petitioner to the Montgomery County Police Department, where he was provided the DR-15 Advice of Rights form.  The officer then instructed Petitioner to follow along as he read the form aloud.  The DR-15 reads, in pertinent part, as follows:

> You may refuse to submit to the test(s), unless you were in a motor vehicle accident resulting in the death of or life-threatening injury to another person[.]
>
> **Suspension of Your Maryland Driver's License or Driving Privilege:**
> *If you refuse to submit to the test*, or if you submit to the test and the result indicates an alcohol concentration of 0.08 or more at the time of testing, *your Maryland driver's license shall be confiscated*, you will be issued an Order of Suspension and, if eligible, a temporary license valid for 45 days.  The following periods of suspension shall be imposed against your license or privilege to drive in Maryland:
>
> ***If you refuse to submit to a test, your suspension shall be 270 days for a 1st offense and 2 years for a 2nd or subsequent offense.***
> ***If your test result is an alcohol concentration of at least 0.08 but less than 0.15, your suspension shall be 180 days.  If the offense involves a motor vehicle accident that resulted in the death of another person, your suspension shall be 6 months for a 1st offense and 1 year for a 2nd or subsequent offense.***
> **If your test result is an alcohol concentration of 0.08 but less than 0.15, your suspension may be modified or a restricted license may be issued at a hearing[.]**
> ***If your test result is an alcohol concentration of 0.15 or more, your suspension shall be 180 days for a 1st offense and 270 days for a 2nd or subsequent offense.  If the offense involves a motor vehicle accident that resulted in the death of another person, your suspension shall be 1 year for a 1st offense and for a 2nd or subsequent offense your license shall be revoked.***
> ***If you refuse a test, or take a test with a result of 0.15 or more, you shall be ineligible for modification of your suspension or the issuance of a restricted***

6

*license, unless you participate in the Ignition Interlock System Program under Maryland Transportation Article §16-404.1.*

*If you hold a commercial driver's license (CDL) <u>and were driving a non-commercial motor vehicle when you were stopped, and you refuse to submit to a test, your CDL or privilege shall be disqualified for 1 year for a 1st offense or for life if your CDL or privilege has been previously disqualified for at least 1 year under Maryland Transportation Article §16-812 (a) or (b), a federal law, or any other state's law.</u>*

***

*Instead of requesting a hearing or upon the suspension or revocation of your driver's license, you may elect to participate in the Ignition Interlock System Program* if the following conditions are met: 1) your driver's license is not currently suspended, revoked, canceled, or refused, and 2) within 30 days of the date of this Order of Suspension you a) elect in writing to participate in the Ignition Interlock System Program for 1 year if your test resulted in an alcohol concentration of 0.15 or more or you refused the test or 6 months if your test resulted in an alcohol concentration of at least 0.08 but less than 0.15; and b) surrender a valid Maryland driver's license or sign a statement certifying that the license is no longer in your possession. . . .

(Bold in original) (italics and underling added for emphasis). A body camera used throughout Petitioner's stop and arrest reveals that officers attempted to clarify whether Petitioner held a CDL. During their inquiry and after reading the DR-15, the officers orally asserted the repercussions of refusing to take the test:

> Officer 1: Basically what I read you is, if you refuse to submit to the test, it's 270 days for your license, but you have a CDL Class B (holding license).
> Officer 2: You drive for Metro?
> Officer 1: Who do you drive for? The CDL that you have.
> Officer 2: You drive a Metro bus?
> Officer 1: It says trains, coach, or bus, you drive a bus?
> Officer 2: I saw your Metro ID in your wallet, you drive for Metro? You realize if you don't take the test, your driver's license is going to be suspended for 270 days, if you don't take this test. And if you take it, and it's a high blow, you blow anything 0.08 or higher, you

7

get suspended for 180 days. So, if you take the test and you don't do well, it's a 180 day suspension. If you don't take the test, your license gets suspended for 270 days. And because I assume that you drive a bus for Metro based on your CDL and the ID you have in your wallet, that means this is going to affect your work. So this can affect your work for 180 days or it can affect your work for 270 days. It's completely up to you. Would you like to take the test or not?

Petitioner did not respond. The officers did not repeat the advisement that Petitioner's CDL would be disqualified for a year if he opted to refuse the test. After repeatedly asking Petitioner whether he wanted to take the test and based on his lacking responsiveness, the officers treated the lack of response as a refusal. As a result, Petitioner was issued an Order of Suspension.

Petitioner filed a timely request for an administrative hearing, which was held on July 14, 2017. Petitioner testified that the officers' oral assertions after the DR-15 led him to believe that he would be able to get his license and CDL back after 270 days. Petitioner testified that, had he known his CDL would be disqualified for a full year, he would have opted to take the test. Petitioner asserted that the officers' oral advisements and the DR-15 were false, misleading and violated his due process rights, as well as his right to "full advisement" of administrative sanctions under Transp. § 16-205.1. The Administrative Law Judge rejected Petitioner's arguments, and held that the DR-15 provided sufficient advice and that the officers' oral advisements were factually correct.

On January 10, 2018, following a hearing, the Circuit Court for Montgomery County affirmed the decision of the Administrative Law Judge. Following the circuit court decision, Petitioner noted a timely appeal and we granted certiorari.

8

**STANDARD OF REVIEW**

This Court has stated that "[w]e review an administrative agency's decision under the same statutory standards as the [c]ircuit [c]ourt," and evaluate the decision of the agency rather than the circuit court. *Hill,* 415 Md. at 239, 999 A.2d at 1023 (internal quotations and citations omitted); *Gigeous v. Eastern Correctional Institution*, 363 Md. 481, 495-96, 769 A.2d 912, 921 (2001). We, however, may always determine "if the administrative decision is premised upon an erroneous conclusion of law." *Hill,* 415 Md. at 239, 999 A.2d at 1023 (citations omitted). "Therefore, ordinarily the court reviewing a final decision of an administrative agency shall determine (1) the legality of the decision and (2) whether there was substantial evidence from the record as a whole to support the decision." *Gigeous*, 363 Md. at 496, 769 A.2d at 922 (internal citations omitted). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 497, 769 A.2d at 922 (internal citations omitted). Additionally, purely legal questions are reviewed *de novo* with "'considerable weight' to the agency's interpretation and application of the statute which the agency administers." *People's Ins. Counsel Div. v. State Farm Fire & Cas. Ins. Co*., 214 Md. App. 438, 449, 76 A.3d 517, 524 (2013) (internal citations omitted).

**DISCUSSION**

A. ***The officers' oral advisements after a complete reading of the DR-15 did not pose a statutory or due process violation.***

Petitioner contends that his statutory right to be fully advised of sanctions under Transp. § 16-205.1, and his due process rights under both the Fourteenth Amendment of

the U.S. Constitution and Article 24 of the Maryland Declaration of Rights, were violated because he was given false or misleading advice regarding the consequences of failing or refusing a breath test.

*Full advisement under Transp. § 16-205.1*

Transp. § 16-205.1(b)(1) specifies that a detaining officer "shall advise" a detained person of the resulting sanctions from refusing a test or blowing at or above a specified alcohol concentration. *See also Transp.* § 16-205.1(f)(7) (cross-referencing subsection (b)(2) with regards to "full advisement").

In *Motor Vehicle Admin. v. Chamberlain*, 326 Md. 306, 604 A.2d 919 (1992), we held that a detaining officer need only advise a detained motorist of the administrative sanctions that are enumerated in Transp. § 16-205.1. In *Chamberlain*, Mr. Chamberlain was stopped for speeding and on suspicion of driving while intoxicated. *Id.* at 309, 604 A.2d at 920. After conducting several field sobriety tests, the officer placed Mr. Chamberlain under arrest. *Id.* The officer read the DR-15 in full, but did not notify Mr. Chamberlain that if he met certain conditions, the suspension *could* be modified or a restrictive license *could* be issued, even if Mr. Chamberlain failed the test. *Id.* at 310, 604 A.2d at 921. Mr. Chamberlain refused the test, later claiming that he was not fully advised of the sanctions associated with refusing or failing the test.[4] In evaluating Mr. Chamberlain's assertion that he was not fully advised of sanctions, we held that

---

[4] Mr. Chamberlain *may* have obtained a restricted license or modification of suspension in the event that he took the test, but refusal to take the test provided no such option. 326 Md. at 312, 604 A.2d at 922.

10

[a]side from [Transp.] § 16–205.1(b)(1), the critical provisions of the statute refer to "administrative sanctions that shall be imposed;" it is only those of which a driver is required to be informed. Mere potential eligibility for modification of suspension or a restrictive license is not an "administrative sanction that shall be imposed."

326 Md. at 316, 604 A.2d at 924-25. Our holding in *Chamberlain* explained that detained motorists are fully advised of their rights when notified of administrative sanctions. *Id.* at 317, 323, 604 A.2d at 924, 927. These sanctions are outlined clearly in the DR-15 and a reading of the Advice of Rights form provides full advisement to detained motorists. We held that Mr. Chamberlain was fully advised of his rights through a reading of the DR-15 because he was provided notice of administrative sanctions; modification of suspension or a restrictive license was simply a "mere potentiality" that did not constitute an administrative sanction that had to be disclosed by the officer. *Id.* at 318, 604 A. 2d at 924-25.

In the case at bar, Petitioner was fully advised of sanctions under Transp. § 16-205.1. The officer's reading of the DR-15 guaranteed full advisement of administrative sanctions. Although Petitioner claims that the enhanced sanction he faced as a CDL holder was not a "mere potentiality," he was apprised of the sanctions for CDL holders when he was read the DR-15 in full. In relevant part, the DR-15 states:

> **If you hold a commercial driver's license (CDL)** and were driving a non-commercial motor vehicle when you were stopped, and your refuse to submit to a test, your CDL or privilege shall be disqualified for 1 year for a 1st offense or for life if your CDL or privilege has been previously disqualified for at least 1 year under Maryland Transportation Article § 16-812(a) or (b), a federal law, or any other state's law.

11

(Bold in original).  As such, Petitioner's contention that he was not fully advised under Transp. § 16-205.1 is unfounded.

Petitioner asserts that full advisement is negated when motorists are provided with false or misleading advice.  In *Hare v. Motor Vehicle Admin.*, 326 Md. 296, 604 A.2d 914 (1992), we indicated that a detaining officer's negation of previously and properly given sanctions can violate a motorist's due process rights.  *Id.* at 306, 604 A.2d at 919.  We cautioned that though officers need not provide detainees with "mere potentialities" of sanctions, the State cannot "mislead the defendant or construct road blocks, thus unduly burdening decision-making." *Id.* at 304, 604 A.2d at 918.  We further elaborated upon the term "full advisement" and the implications of subsequent assertions that may prove to be false or misleading in *Forman v. Motor Vehicle Admin.*, 332 Md. 201, 630 A.2d 753 (1993).  We stated:

> "Fully advised" means not only advised *initially,* but the detaining officer must also take care not to *subsequently* confuse or mislead the driver as to his or her rights under the statute.  Further, the officer certainly must not in any way induce the driver into refusing the test, a result running counter to the statute's purpose of encouraging drivers to submit to alcohol concentration tests.

332 Md. at 217, 630 A.2d at 762 (emphasis in original).  In the case at bar, Petitioner was read the DR-15 in full.  Officers subsequently advised Petitioner that if he took the test, his license would be suspended for 180 days, but if he did not take the test, his license would be suspended for 270 days.  This timeframe regarding the suspension of Petitioner's non-CDL license was proper.   The officers did, however, misstate the implication on Petitioner's work by stating "[T]his can affect *your work* for 180 days or it can affect *your*

12

*work* for 270 days." In reality, Petitioner's test refusal implicated his work for a year. ("If you hold a commercial driver's license (CDL) and were driving a non-commercial motor vehicle when you were stopped, and you refuse to submit to a test, your CDL or privilege shall be disqualified for 1 year for a first offense. . . ." DR-15 (bolding omitted)).

Petitioner asserts that the oral advisements were misleading, particularly with regards to the effect on his work, because they implied that Petitioner's sanction would be confined to a maximum of 270 days rather than a year-long disqualification of his CDL. There is no evidence that officers' oral statements misled or confused Petitioner regarding the effect a test refusal could have on his employment. Petitioner did not testify that the oral advisements misled him in any way and the body camera footage reveals that Petitioner was unresponsive throughout the officers' inquiry regarding whether he wanted to take the test. There is nothing that demonstrates the officers constructed an obstacle or "road block" that unduly burdened Petitioner's decision-making, nor does anything that the officers said suggest that they induced Petitioner's decision-making. Because the information in the DR-15 provided full advisement and the officers' verbal assertions were not misleading or false, Petitioner's statutory claim regarding full advisement is without merit.

### *As-Applied Due Process Claim under the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights*

Petitioner makes an as-applied due process claim, asserting that the officers' oral advisements prejudiced him because he did not appreciate that his CDL would be disqualified for a year if he refused the test. We have held that a driver's license is an entitlement which cannot be taken away without due process. *Hare*, 326 Md. at 301, 604

13

A.2d at 916. In *Hare*, an officer arrested Mr. Hare for driving while intoxicated and read him the DR-15. *Id.* at 298, 604 A.2d at 915. Mr. Hare refused to take the alcohol concentration test, resulting in a 120-day suspension of his license. *Id.* at 299, 604 A.2d at 915. At an administrative hearing, Mr. Hare testified that he did not know that he would be ineligible for a modification of a suspension or restrictive license if he refused to take the test. *Id.* Had he known, Mr. Hare testified, he would likely have consented to take the test and as such, the DR-15 violated his right to due process because it did not fully advise him of administrative sanctions. *Id.* at 299-300, 604 A. 2d at 915. In evaluating Mr. Hare's due process claim, we wrote:

> The continued possession of a driver's license . . . may become essential to earning a livelihood; as such, it is an entitlement which cannot be taken without the due process mandated by the Fourteenth Amendment.
>
> ***
>
> What process a defendant is due is, of course, dependent upon the facts and circumstances of the case. To make that determination, we have to examine the importance of the life, liberty, or property interest at stake and the extent to which the questioned procedure might produce the possibility of uninformed decision-making. Against the individual's interest, we must weigh the State's legitimate competing interest, which necessarily includes the avoidance of the increased administrative or fiscal burdens resulting from the requested procedure.

*Id.* at 301-03, 604 A.2d at 916-17 (internal citations, quotations, and brackets omitted). We concluded that the DR-15 did not violate Mr. Hare's right to due process because the officer provided the advice required by Transp. § 16-205.1 and as a matter of due process, the officer was not "required to provide any advice other than that . . . prescribed" in Transp. § 16-205.1. *Id.* at 306, 604 A.2d at 919. However, "had [the officer] undertaken to provide

14

additional information and it turned out to be misleading or inaccurate, that, in itself, may have been a denial of due process." *Id.* (citation omitted).

Petitioner, akin to Mr. Hare, was fully advised of sanctions under Transp. § 16-205.1 through a reading of the DR-15. Though Petitioner asserts that disqualification of his CDL is a mandated sanction that must be disclosed as prescribed in Transp. § 16-205.1, this disclosure occurred when officers read the Advice of Rights form. The officers' subsequent oral advisements did not prejudice Petitioner, a requisite component of an as-applied due process claim. The body camera recording reveals that Petitioner never expressed confusion about the sanctions that officers expressed, nor did Petitioner indicate that officers' collateral statements misled him during the administrative hearing.[5] Officers' collateral advisements after reading the DR-15 did not mislead Petitioner or construct any "road blocks" that unduly burdened Petitioner's decision-making. We hold that Petitioner's due process rights were not violated.

**B. The DR-15 properly advises non-CDL motorists of the length of time the ignition interlock would be required in the event of a refusal, and therefore there is no violation of due process or a failure to "fully advise" a driver pursuant to Transp. § 16-205.1.**

Petitioner asserts that the DR-15 did not advise him of the period of participation for the Interlock Program for a motorist who refuses the test, claiming that the form is misleading because it implies that motorists can get an interlock restriction for 270 days

---

[5] During his administrative hearing, Petitioner testified that he was not aware of how a test refusal would affect his CDL, which is distinct from the assertion that he was misled or provided with false information. Petitioner also never denied that the DR-15 was read to him in full.

rather than one year, unless they waive a hearing. Transp. § 16-205.1(b)(3)(vii) requires

an officer to:

> Inform the person that, if the person refuses a test or takes a test that indicates an alcohol concentration of 0.08 or more at the time of testing, the person may participate in the Ignition Interlock System Program under Transp. § 16-404.1 of this title instead of requesting a hearing under this paragraph, if the following conditions are met:
> 1. The person's driver's license is not currently suspended, revoked, canceled, or refused; and
> 2. Within the same time limits set forth in item (v) of this paragraph, the person:
>> A. Surrenders a valid Maryland driver's license or signs a statement certifying that the driver's license is no longer in the person's possession; and
>> B. *Elects in writing to participate in the Ignition Interlock System Program for 1 year*[.]

(Italics added for emphasis). The DR-15 provides officers with a script to address Transp.

§ 16-205.1(b)(3)(vii), *supra*. The form states, in relevant part:

> **Instead of requesting a hearing or upon the suspension or revocation of your driver's license, you may elect to participate in the Ignition Interlock System Program** if the following conditions are met: 1) your driver's license is not currently suspended, revoked, canceled, or refused, and 2) within 30 days of the date of this Order of Suspension you a) elect in writing to participate in the Ignition Interlock System Program *for 1 year if your test resulted in an alcohol concentration of 0.15 or more or you refused the test* or 6 months if your test resulted in an alcohol concentration of at least 0.08 but less than 0.15; and b) surrender a valid Maryland driver's license or sign a statement certifying that the license is no longer in your possession. An Ignition Interlock Election form is located on the reverse side of the driver's copy of the Order of Suspension.

(Bold in original) (italics added for emphasis). Petitioner asserts that this one year

participation in the Interlock Program for refusing a test or having an alcohol concentration

of 0.15 or more is unclear, resulting in a violation of full advisement and due process.

16

Petitioner contends that the lacking clarity of this year-long duration arises from another, earlier section of the DR-15, which states:

> **If you refuse to submit to a test, your suspension shall be 270 days for a 1st offense and 2 years for a 2nd or subsequent offense.**
>
> ***
>
> **If you refuse a test, or take a test with a result of 0.15 or more, you shall be ineligible for modification of your suspension or the issuance of a restricted license, unless you participate in the Ignition Interlock System Program under Maryland Transportation Article §16-404.1.**

(Bold in original). Petitioner asserts that this portion of the DR-15 implies that motorists are eligible for modification of suspension or issuance of a restricted license if they participate in the Interlock Program for a period of 270 days. This is in contrast to the mandated year of participation that results from test refusal or a blood alcohol concentration at or above 0.15. However, the language of the DR-15 is clear. The provision providing that motorists must "participate in the Ignition Interlock System Program for 1 year if your test resulted in an alcohol concentration of 0.15 or more or if you refused the test. . ." is unequivocal. Not only was Petitioner read this provision, but he was provided with a copy of the DR-15 to follow along as officers read it to him. The provision outlining the year-long duration begins with a bolded heading that draws the readers' attention to the fact that the paragraph applies specifically to the Interlock Program. There is no ambiguity regarding this provision or duration.

In *Motor Vehicle Admin. v. Seenath*, 448 Md. 145, 136 A.3d 885 (2016), we held that the language of the Advice of Rights form did not violate due process as applied to the driver, nor was the form misleading or lacking full advisement as to a CDL holder's

eligibility for a restrictive license. Mr. Seenath contended that the DR-15 violated due process because it did not advise CDL holders who drove a non-commercial vehicle that they would be ineligible for a restrictive license under the Interlock Program if their blood alcohol concentration was 0.08 or higher. *Id.* at 150, 136 A. 3d at 888. We held that the DR-15 adequately captured the full advisement of administrative sanctions because the language in the form is unambiguous, with no prejudice or roadblocks to inhibit a driver's decision-making process. *Id.* at 180, 188, 193, 136 A. 3d at 905, 910, 913. Akin to *Seenath*, Petitioner in the case at issue has not demonstrated that he suffered any prejudice that would result in insufficient advisement or due process concerns.

Petitioner's argument does not support a statutory or due process challenge to the sufficiency of the Advice of Rights form, as the form is unambiguous and provides full advisement of the resulting administrative sanctions. Furthermore, Petitioner failed to demonstrate that he was prejudiced by the form. He never inquired about any durational requirements while he was with officers, nor was he responsive to officers' queries regarding whether or not he wanted to take a blood alcohol test. We hold that the DR-15 fully advises motorists of the length of time the ignition interlock is required in the event of test refusal or when a motorist has an alcohol concentration of 0.15 or higher.

## CONCLUSION

In sum, we determine that the officers' oral advisements after a complete reading of the DR-15 did not operate to negate full advisement, nor did the advisements result in prejudice that violated Petitioner's due process rights. We also determine that the DR-15 is unambiguous regarding the duration of participation in the Interlock Program and is

18

consistent with Petitioner's right to due process and the statutory right to full advisement under Transp. § 16-205.1.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY IS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**

Judge Watts joins in judgment only.